William A. **QUINNEY**, et al., Plaintiffs,

v.

**AMERICAN MODERN HOME INSURANCE COMPANY,** Defendant.

No. CIV.A. 3:CV–00–0571.

United States District Court, M.D. Pennsylvania.

May 4, 2001.

Robert J. Powell, Stephen A. Seach, Law Offices of Robert J. Powell, West Hazleton, PA, for Plaintiffs.

Eugene A. Luciw, Hecker, Brown, Sherry & Johnson, Bethlehem, PA, for Defendant.

## *MEMORANDUM*

CAPUTO, District Judge.

This matter is before me on the Plaintiffs' Motion to Dismiss Defendant's Counterclaim (Doc. 5). It presents a question of the meaning of language in the Underinsured Motorists Coverage portion of the policy.

William A. Quinney purchased what is known as the Elite Collector Policy from the Defendant. It was to cover Mr. Quinney's collector cars, a 1978 Dodge Magnum and a 1966 Plymouth Barracuda. Mr. Quinney had another vehicle, a 1993 Ford Escort, which he used regularly and which was insured by a company other than the

defendant. Mr. Quinney, as a part of the policy with Defendants, agreed that the collector vehicles would not be used regularly, but rather on a limited basis such as exhibitions, club activities, parades, and occasional pleasure driving. He further agreed the vehicles would be kept in a locked garage at night.

Tragically, Mr. Quinney's son, Matthew Allen Quinney, age 15, was killed on May 2, 1999, while riding as a passenger in a car owned by Sylvia Miller and driven by Michael Miller. The Millers are not related to the Quinneys, and the car in which Matthew was riding was insured by Ms. Miller with State Farm Insurance Company. Plaintiff recovered from State Farm and from his carrier on his regular use vehicle, Erie Insurance Group, under the underinsured motorist coverage provision. Plaintiff seeks underinsured motorist reimbursement from Defendant, and has filed a declaratory judgment action seeking a declaration of coverage. The Defendant has filed an answer and counterclaim, the latter of which seeks a declaration that the sought-after underinsured motorist coverage is not available under the policy issued by the Defendant. Defendant also argues, in the alternative, that the recovery from it is limited to $133,000.

I hold that the policy by the Defendant does provide underinsured motorist coverage in the full amount of $200,000 in the circumstances here present, and therefore the motion will be granted.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) states that a motion to dismiss may be granted for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). For the purposes of the motion to dismiss, the court takes as true all well-pleaded allegations in plaintiffs' complaint

and construes all reasonable inferences in the pleader's favor. *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113 (3rd Cir.1998). The burden is on the moving party to prove that no claim exists. *See In re Corestates Trust Fee Litig.*, 837 F.Supp. 104 (E.D.Pa.1993), *aff'd*, 39 F.3d 61 (3d Cir.1994). A complaint should not be dismissed merely because plaintiff's allegations do not support the legal theory on which he intends to proceed. *Bowers v. Hardwick*, 478 U.S. 186, 202, 106 S.Ct. 2841, 2849, 92 L.Ed.2d 140 (1986). The court has a duty to examine the complaint to determine if the allegations provide for relief on any possible theory. *Id.* A complaint should only be dismissed for failure to state a claim if it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

## DISCUSSION

### A. Count I of Counterclaim

■ This controversy centers around the language of the policy provisions entitled "Underinsured Motorist Coverage Pennsylvania Non–Stacked. The provision provides that Defendant will pay compensatory damages which an **"insured"** is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of bodily injury;

1. Sustained by an **"insured"**; and

2. Caused by an "accident."

The provision defines an insured as follows:

" 'Insured' as used in this endorsement means:

1. You or any **"family member"**;

2. Any other person **"occupying"** "your covered auto".

3. Any person for damages that person is entitled to recover because of **"bodily injury"** to which this coverage applies sustained by a person described in **1.** or **2.** above."

The Defendant argues that this language must be read so as to require that the insured is occupying the vehicle, a collector car, at the time of the accident. The Defendant bolsters its argument by suggesting that this interpretation is the obvious intent of the parties, both because of the limitations on the use of the collector cars and the low premium component ($6.00 for 2 collector cars versus $70.00 for one regular use vehicle) for the underinsured motorist coverage. The defendant argues that the latter factor supports the proposition that William Quinney could not have had a reasonable expectation that underinsured motorist coverage extended beyond an accident involving an insured occupying one of the subject collector cars. *See St. Paul Mercury Ins. Co. v. Corbett*, 428 Pa.Super. 54, 630 A.2d 28 (1993).

The Defendant relies heavily on the *Corbett* case, and asserts its governance in this case. In *Corbett*, Mr. Corbett was injured by a hit and run driver while operating a vehicle owned by his employer. He collected on the underinsured/uninsured coverage under his employer's policy, his mother's policy (he resided with his mother), and a personal policy issued to his wife who also resided in the household. Corbett also had a special antique car policy with St. Paul which covered an antique car and which provided $50,000.00 in underinsured/uninsured motorist benefits. On the issue of coverage, a divided Pennsylvania Superior Court held that virtually the same language, structure and punctuation existent here meant that the coverage was restricted to the "insured, his family members, or any **other** person occupying the "covered auto"; the antique vehicle." *Id.*

at 31. The court said further that [c]over-age under this policy is not independent of any connection with the "covered auto." *Id.* The court amplified its holding by noting that Mr. Corbett could not have reasonably expected underinsured/uninsured motorist coverage beyond the covered auto because of his agreed limited use of the covered auto and the low premium component ($6.00 for the antique car versus $102.00 for the regular use policy) attributed to the underinsured/uninsured coverage.

Defendant concludes with the reminder that when the highest state appellate court has not addressed an issue, a federal court, in predicting what that highest appellate court would do, should afford "considerable weight" to the decision of an intermediate appellate court. *Sprague, Levinson & Thall v. Advest, Inc.*, 623 F.Supp. 11, 14 (E.D.Pa.1985); *see also Mosley v. Wilson*, 102 F.3d 85, 92 (3d Cir.1996).

My review of the language of the policy here at issue leads me to conclude that the underinsured motorist coverage exists.

■■■ The law applicable to the interpretation of insurance policies is the same as that which applies to contracts. Contracts mean what the parties intend. *Stewart v. McChesney*, 498 Pa. 45, 48–49, 444 A.2d 659, 661 (1982); *see also Salant v. Fox*, 271 F. 449, 451 (3d Cir.1921) ("The cardinal rule in every case is to ascertain the intention of the parties. The law presumes that the parties understood the import of their contract and that they had the intention which its terms express."). The exercise is to determine the intention of the parties as manifested by the language of the contract. *Koenig v. Progressive Insurance Co.*, 410 Pa.Super. 232, 236, 599 A.2d 690, 691–2 (1991). My analysis of the insurance contract's language is as follows.

The policy provision entitled "Underinsured Motorists Coverage Pennsylvania Non–Stacked" provides in pertinent part:

### INSURING AGREEMENT

A. We will pay compensatory damages which an **"insured"** is legally entitled to recover from the owner or operator of an **"underinsured motor vehicle"** because of **"bodily injury"**:

　1. Sustained by an **"insured"**; and

　2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the **"underinsured motor vehicle."**

B. **"Insured"** as used in this endorsement means:

　1. You or any **"family member"**;

　2. Any other person **"occupying"** **"your covered auto."**

　　3. Any person for damages that person is entitled to recover because of **"bodily injury"** to which this coverage applies sustained by a person described in **1.** or **2.** above.

In paragraph number B.1., the words "You or any 'family member' " are separated from the words "Any other person 'occupying' 'your covered auto' " by a semi colon. This punctuation notes a complete thought and separate from B.2. It says that the only people who must be occupying the covered auto in order to have coverage are persons other than you (the owner of the policy) or any family member (defined elsewhere in the agreement). It seems clear from this sentence structure that you, the owner, or a family member are not required to have occupied the covered auto at the time of the accident in order to have coverage. Moreover, the use of the reference "by a person described in **1.** or **2.**" in B.3 supports that the

claim of people described in B.1. are different from those described in B.2., the latter being those who must be occupying the covered vehicle in order to sustain coverage.

The superior court in *Corbett* places emphasis on the word "other" which precedes "person" in B.3. to suggest that "occupying the covered vehicle" applies to policy owner and family member. *Corbett*, 630 A.2d at 31. They read it as the insured, a family member and any other person who occupies the covered vehicle. I do not agree with this interpretation. Were that the purpose and intent, there would be no need to name the owner and family member separately from "any other person." The policy would only need to say "any person occupying your covered auto" if coverage was to extend only to those people occupying the vehicle, be they the owner, his family member or any other person who occupies the covered auto. The separation of the owner and family members from people who occupy the covered vehicle signifies that the owner and his family members are covered whether or not they were occupying the covered vehicle. This is in accord with Judge Weiner's analysis in *Zurich Ins. Co. v. Lobach*, No. Civ. A.

97–3281, 1997 WL 535185 (E.D.Pa. Aug. 5, 1997), wherein he explicitly declined to follow *Corbett* for the same reasons advanced in this Memorandum.

Therefore, the Plaintiffs' motion to dismiss count I of the counterclaim will be granted.

### B. *Count II of Counterclaim*

■ Defendant also brings a second count in their counterclaim, arguing that its "Other Insurance"[1] clause limits Plaintiff's gross recovery to an amount equal to $200,000, which is the underinsured limit under Defendant's policy.[2] (Def.'s Answer, Affirm. Defenses and Countercl., Doc. 4 ¶ 82.) In addition, Defendant contends the coverage should be pro rated so that Defendant would only pay its pro rata share of coverage of any gaps in insurance between the $200,000 aggregate limit and any monies recovered from third party liability carriers. (*Id.* ¶ 83.) Because Plaintiff had $100,000 of coverage under the Erie policy, Defendant notes that its policy comprised two-thirds of Plaintiff's total coverage. Consequently, because Defendant believes that recovery should be capped at $200,000, it asserts it is only

---

1. First The Underinsured Motorists Coverage applicable to the vehicle the "insured" was occupying at the time of the accident. Second The Policy affording Underinsured Motorists Coverage to the "insured" as a named insured or family member.
 1. When there is applicable insurance available under the First priority:
 a. The limit of liability applicable to the vehicle the "insured" was "occupying", under the policy in the First priority, shall first be exhausted; and
 b. The maximum recovery under all policies in the Second priority shall not exceed the amount by which the highest limit for any one vehicle under any one policy in the Second priority exceeds the limit applicable under the policy in the First priority.
 2. When there is no applicable insurance available under the First priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one vehicle under any one policy.

 If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

2. In this instance, Defendant's stacked limit provides for coverage of $200,000 by virtue of underinsured motorist ("UIM") coverage of $100,000 for each of Plaintiff's two cars (as opposed to Erie's limit of $100,000). (Doc. 18, at 14.)

liable for two-thirds of $200,000, or $133,000. (*Id.*; Def.'s Supplemental Mem. Opp'n to Pl.'s Mot. to Dismiss Countercl., Doc. 18, at 14.) Plaintiffs move for the Court to dismiss count II of Defendant's counterclaim pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state claims upon which relief sought may be granted. (Doc. 5.)

### 1. Policy Language

 Courts are required to interpret the language of the contract to determine the intent of the parties. *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir.1997); *McMillan v. State Mut. Life Assurance Co. of Am.*, 922 F.2d 1073, 1074 (3d Cir. 1990)). When the contract's language is clear and unambiguous, the court will enforce that language. *Medical Protective*, 198 F.3d at 103. "The courts have held, however, that if the policy provision is reasonably susceptible to more than one interpretation, it is ambiguous. In determining whether a contract is ambiguous, the court must examine the questionable term or language in the context of the entire policy and decide whether the contract is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Nationwide Mut. Insur. Co. v. Reidler*, No. CIV. A. 99–4463, 2000 WL 424286, at *2 (E.D.Pa. April 19, 2000) (citing *Medical Protective*, 198 F.3d at 103). If the contract provision is ambiguous and reasonable interpretations are offered by both the insured and the insurer, then the language should be construed against the insurer. *Reidler*, 2000 WL 424286, at *2

(citing *Medical Protective*, 198 F.3d at 103–04 and *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983)); *Britamco Underwriters, Inc. v. Weiner*, 431 Pa.Super. 276, 281, 636 A.2d 649, 651 (1994), *allocatur denied*, 540 Pa. 575, 655 A.2d 508 (1994). "However, the court should read policy provisions so as to avoid ambiguity and not twist the language or rewrite the contract to create doubts where none exist." *Reidler*, 2000 WL 424286, at *2 (citing *Medical Protective*, 198 F.3d at 103; *Northbrook Ins. Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir.1982); *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 606, 735 A.2d 100, 106 (1999)).

In this case, the applicable provision in the policy, according to the Defendant, states:

> ... the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one vehicle under any one policy.
>
> If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

(Doc. 4 ¶ 80; Doc. 18 at 14.)

 I note that the second paragraph of the "Other Insurance" clause is nearly identical to § 1733(b) of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. Cons.Stat. Ann. § 1733(b) (2000),[3] and I find the language

---

**3.** (a) **General Rule.**—Where multiple policies apply, payment shall be made in the following order of priority:

(1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.

of the statute and Defendant's policy is clear. In particular, § 1733(b) applies in situations where more than one insurance policy of equal priority is involved. An insured who is involved in an accident may assert a claim against any one insurer who must pay the claim as if wholly responsible. JAMES R. RONCA ET AL., PENNSYLVANIA MOTOR VEHICLE INSURANCE: AN ANALYSIS OF THE FINANCIAL RESPONSIBILITY LAW § 5.7, at 103 (2d ed., 1st rev.2000). After payment, that insurer may then recover contribution pro rata from any other responsible insurer for the costs of processing the claim and for benefits paid. *Id.* It should also be noted that § 1733(b) was included within the 1990 Amendments to the Financial Responsibility Law as a means of "speeding up the resolution of claims within the judicial system, and as a means of serving the rights of the insureds.... Disputes between the responsible insurers are then resolved between themselves, after full payment of the claim to the insured." *Id.* § 9.4, at 154.1.

In this case, Defendant seeks to place a cap on Plaintiff's coverage and reduce Plaintiff's coverage by requiring a set-off through a contribution pro rata and any recovery from third party liability carriers against Plaintiff. According to Defendant, Plaintiffs would only be entitled to a total recovery of $200,000; Defendant's share would be $133,000 and Erie's share would be $67,000. Since Erie paid its $100,000 from the excess policy, the additional $33,000 paid out by Erie would likely be returned to Erie or whatever Erie's policy requires. (Oral Argument June 30, 2000 Tr., at 44.) Defendant contends that the language of its policy is clear and unambiguous. I agree that the language of this second paragraph is clear, although I strain to comprehend just how Defendant finds an entitlement to pay only a pro rata share of a maximum limit determined by the equivalent of the stacked limit of Defendant's policy. The language of Defendant's policy just does not support such a reading.

I note that the statute and policy, for that matter, apply in instances where the insured makes a claim against one insurer first; both clearly state that a pro rata contribution can be recovered from any other insurer. Nowhere does the policy or the statute state that the insurer can set-off payment to the insured. Although Defendant is the second insurer, the intention of the statute was to safeguard insureds so they would receive their payment. Defendant can recover through pro rata contribution from other insurance companies but not through a set-off against Plaintiffs.

## 2. Public Policy

 With respect to the construction of the preceding paragraph, I likewise find the language clear and unambiguous. However, where the policy language is clear and unambiguous, the policy may be valid and enforceable as long as it does not violate any clearly expressed public policy. *Jeffrey v. Erie Ins. Exch.*, 423 Pa.Super. 483, 490, 621 A.2d 635, 638 (1993) (citing *Tallman v. Aetna Cas. & Sur. Co.*, 372 Pa.Super. 593, 595, 539 A.2d 1354, 1355 (1988)); *Pempkowski v. State Farm Mut. Automobile Ins. Co.*, 451 Pa.Super. 61, 66, 678 A.2d 398, 401 (1996). Public policy indicates that courts will interpret statutes

---

(2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.

 (b) **Multiple sources of equal priority.**—The insurer against whom a claim is asserted first under the priorities set forth in subsection (a) shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim. 75 Pa. Cons. Stat. Ann. § 1733

broadly to "help manifest their legislative intent." *Jeffrey,* 423 Pa.Super. at 494, 621 A.2d at 640. As Defendant's policy states, the maximum that can be recovered in this instance cannot exceed the highest applicable limit for any one vehicle under any one policy. Even though the language is clear, it is problematic, given the enactment of the MVFRL.

Pennsylvania courts have not specifically addressed the issue of whether an insurer may set-off claims through contribution pro rata against an insured when there is more than one excess policy. Plaintiffs rely upon decisions by the Pennsylvania Superior Court and the Third Circuit which have held that Pennsylvania's excess coverage statute may not be circumvented by policy language which converts under-insurance into "gap" type coverage. *See Allwein v. Donegal Mut. Ins. Co.,* 448 Pa.Super. 364, 671 A.2d 744 (1996), *allocatur denied,* 546 Pa. 660, 685 A.2d 541 (1996); *North River Ins. Co. v. Tabor,* 934 F.2d 461 (3d Cir.1991); *see also* RONCA ET AL., *supra,* § 11.7, at 179. Pennsylvania courts have held that set-off clauses, under the MVFRL, which attempt to reduce recovery by amounts paid on behalf of responsible persons are void as violative of public policy. *Allwein,* 448 Pa.Super. at 385, 671 A.2d at 755; *North River,* 934 F.2d at 464–65; RONCA ET AL., *supra,* § 11.7, at 179.

Defendant challenges Plaintiffs' reliance upon *Allwein v. Donegal Mut. Ins. Co.,* 448 Pa.Super. 364, 671 A.2d 744 (1996), *allocatur denied,* 546 Pa. 660, 685 A.2d 541 (1996) and *North River Ins. Co. v. Tabor,* 934 F.2d 461 (3d Cir.1991) asserting that these two cases are inapposite to the case at bar. (Doc. 18, at 20.) Defendant maintains that *Allwein* and *Tabor* both involve policies where the tortfeasor's liability limits exceed the claimant's UIM coverage; the UIM coverage would be offset by the primary liability limits of the tortfeasor. (*Id.*) In this case, Defendant contends that the set-off is created not by the tortfeasor's policy, but by a second excess policy, namely, Erie's. (*Id.* at 21.) Therefore, the *Allwein* and *Tabor* court's decision favoring excess over gap coverage applies only in circumstances where primary coverage would be set off from UIM coverage. (*Id.*) Defendant distinguishes its claim contending that the issue is not about excess coverage versus gap coverage.

Defendant's argument is persuasive; I agree that the issue presented here is not about excess or gap coverage *per se.* However, I do believe the issue *is* one regarding the principles of excess coverage and the underlying rationale for supporting it. *Tabor* provides helpful discussion on the matter. In particular, the Third Circuit noted that the legislative intent behind the MVFRL was to provide coverage for victims of negligent uninsured or underinsured drivers. "Under the MVFRL, insurers must offer underinsured motorist coverage, [which] is controlled by statute and by a public policy meant to foster the fullest possible, or 'excess,' coverage." *Tabor,* 934 F.2d at 465–66. If defendant's arguments are supported and a set-off through contribution pro rata is acceptable, then Plaintiffs would not recover completely, since the set-off would limit Plaintiff's coverage, thereby frustrating the intent of the legislature.

Under Defendant's calculations, since Defendant insured two cars with the stacked limit of $200,000, Plaintiff's pro rata share from Defendant would be $133,000. Setting off through pro rata contribution would prevent Pennsylvania's statutory scheme from achieving its desired effect. *See Tabor,* 934 F.2d at 464–65. The *Tabor* court noted that "it can reasonably be inferred that the Legislature thought that once it adopted the

'excess' version of underinsurance and mandated it be offered insurers, set-off provisions would no longer be upheld by the courts." *Tabor,* 934 F.2d at 465 n. 3.

In holding in favor of excess coverage, the *Tabor* court also referred to the rationale behind the decisions which have repeatedly struck down anti-stacking provisions, again referencing the legislative intent in providing the "fullest coverage possible for injured insureds." *Id.* at 466. Pennsylvania courts have been consistent in striking down anti-stacking provisions, not only for violation of the statute's intent, but also to protect the reasonable expectations of the insured. *Id.* Where the insured has paid multiple premiums, the insured may reasonably believe that he has "multiple coverage." *Id.* In this case, Plaintiff paid premiums for the two automobiles, regardless of the amount in premiums actually paid. The Plaintiff would expect coverage of $200,000, but, according to Defendant, the Plaintiff would only be entitled to $133,000. Such a result would violate the Pennsylvania legislature's intent as well as the expectations of Plaintiffs.

Defendant provides a litany of cases where other exclusions and set-offs have been upheld. (*See* Doc. 18, at 16–17.) However, these decisions are distinguishable since they centered around "family car exclusion" clauses which preclude recovery of underinsured benefits by family members who were injured by the insured's own automobile, or involved insureds whose voluntary choices or actions increased the risk of loss. *See Kmonk–Sullivan v. State Farm Mut. Automobile Ins. Co.,* 1999 Pa.Super. 323, 746 A.2d 1118, 1125 (1999) (citing *"Hall v. Amica Mut. Ins. Co.,* 538 Pa. 337, 648 A.2d 755 (1994) (upholding territorial exclusion where insured was injured by phantom vehicle while driving in Barbados); *Mari-*

*no v. General Accident Ins. Co.,* 416 Pa.Super. 1, 610 A.2d 477 (1992) (upholding exclusion of claims for bodily injury while the insured commercial vehicle was carrying persons or property for a fee); *Paylor v. Hartford Ins. Co.,* 536 Pa. 583, 640 A.2d 1234 (1994) (upholding family vehicle exclusion in the context of a single car accident where the insured was trying to convert UIM coverage into liability coverage)"); *Eichelman v. Nationwide Ins. Co.,* 551 Pa. 558, 711 A.2d 1006 (1998) (upholding household exclusion clause); *Caron v. Reliance Ins. Co.,* 703 A.2d 63 (Pa.Super.1997) (upholding exclusion from UIM coverage under employer's policy where employee/claimant was not occupying insured vehicle); *St. Paul Mercury Ins. Co. v. Corbett,* 428 Pa.Super. 54, 630 A.2d 28 (1993) (*see* discussion *supra* ); *Frazier v. State Farm Mut. Automobile Ins. Co.,* 445 Pa.Super. 218, 665 A.2d 1 (1995) (holding pedestrian not eligible for recovery of uninsured motorist benefits); *Nationwide Mut. Ins. Co. v. Cummings,* 438 Pa.Super. 586, 652 A.2d 1338 (1994) (approving nonpermissive use exclusion); *Hart v. Nationwide Ins. Co.,* 541 Pa. 419, 663 A.2d 682 (1995) (excluding uninsured motorist benefits to person operating his own uninsured automobile at time of accident was valid and enforceable exclusion); *Windrim v. Nationwide Mut. Ins. Co.,* 412 Pa.Super. 155, 602 A.2d 1356 (1992), *rev'd,* 537 Pa. 129, 641 A.2d 1154 (1994) (upholding exclusion coverage for injury suffered by insured driving vehicle not covered under policy); *Sturkie v. Erie Ins. Group,* 407 Pa.Super. 117, 595 A.2d 152 (1991) (precluding recovery under liability and underinsurance coverages of same motor vehicle insurance policy); *Cooperstein v. Liberty Mut. Fire Ins. Co.,* 416 Pa.Super. 488, 611 A.2d 721 (1992) (same); *Nationwide Mut. Ins. Co. v. Hampton,* 935 F.2d 578 (3d Cir.1991) (upholding household exclusion clause denying uninsured/underin-

sured benefits for bodily injuries sustained by a relative occupying an uninsured vehicle under policy).

Defendant also relies upon *Jeffrey v. Erie Ins. Exch.*, 423 Pa.Super. 483, 621 A.2d 635 (1993); *State Farm Mut. Automobile Ins. Co. v. Broughton*, 423 Pa.Super. 519, 621 A.2d 654 (1993); and *Pempkowski v. State Farm Mut. Automobile Ins. Co.*, 451 Pa.Super. 61, 678 A.2d 398 (1996) where unambiguous set-off clauses were upheld. In *Jeffrey* and *Broughton*, the plaintiffs were guest passengers involved in accidents and were seeking to recover under the uninsured motorist coverage of the insureds' policies. The courts held that a guest passenger did not have a contractual relation with the insurer, did not pay premiums nor was a specially designated beneficiary of the policy. *Jeffrey*, 423 Pa.Super. at 506, 621 A.2d at 647 ("We do not believe that a guest passenger can reasonably expect to receive the liability limits of the coverage and, additionally, uninsured motorist benefits, from the same policy."); *Broughton*, 423 Pa.Super. at 522, 524, 621 A.2d at 655–56. These cases cited by Defendant are distinguishable since the Plaintiff was an insured under the policy and not a guest passenger seeking to recover liability and underinsured benefits under the same policy.

On the other hand, the plaintiff in *Pempkowski* was a class-one insured and was covered under the policy. However, the Superior Court upheld the language of the policy which allowed for a set-off precluding recovery of any uninsured motorist benefits since the insured had only purchased $15,000 in uninsured motorist coverage. The court noted that the insured could have elected to purchase stacked uninsured motorist coverage in an amount equal to the liability coverage such that the set off clause would not result in denial of all uninsured motorist benefits. *Id.* at

70 & n. 4, 678 A.2d at 403 & n. 4. Again, the matter is distinguishable because Plaintiff did pay premiums for stacked coverage.

Defendant also cites *Salazar v. Allstate Ins. Co.*, 549 Pa. 658, 702 A.2d 1038 (1997) and *Donnelly v. Bauer*, 553 Pa. 596, 720 A.2d 447 (1998) for precedent where the Pennsylvania Supreme Court has overlooked manifest violations of the MVFRL to uphold rational coverage choices which an insured had made on his policy. Both cases are distinguishable from the matter sub judice.

In *Donnelly*, two insureds were given a notice explaining the difference between the option to purchase either the limited tort option and the full tort option. 553 Pa. at 600, 720 A.2d at 449. Although the notice did not contain any premium or cost comparisons, the insureds purchased the limited tort option allowing them to reduce their insurance premiums. The MVFRL required that the insured receive a premium differential notice. Similarly, in *Salazar*, the insured rejected uninsured/underinsured coverage when she originally purchased her policy and subsequently renewed her policy without making any changes. The insured and relatives living with her were involved in an accident. The resident relatives sought benefits from the insured's policy despite the insured's waiver of the coverage under the reasoning that the insurer had failed to comply with the notice requirements under the MVFRL.

The Pennsylvania Supreme Court held in both *Salazar* and *Donnelly* that the MVFRL did not provide a remedy to the insured when the insurer has failed to provide notice. The Supreme Court also noted that the insureds knowingly and intelligently made a waiver of their benefits. This Court agrees that an individual who is seeking to reduce his premiums should be

held to the provisions which he agreed to. However, in this matter, Plaintiff did not seek to save money by lowering premiums, rather he paid additional premiums to have his automobiles insured. Furthermore, unlike *Salazar* and *Donnelly*, where the MVFRL did not provide a specific remedy for a violation of the statute, the issue here is not whether Defendant specifically violated any provisions of the MVFRL, but whether the provision violates the statute's intent and public policy.

Finally, Defendant contends that its "other insurance" clause is analogous to the "most we will pay" [4] or escape clause in *Bowers v. Feathers,* 448 Pa.Super. 263, 671 A.2d 695 (1995), which was upheld. *Bowers* involved narrow circumstances where the driver was an insured under a multiple coverage policy while driving a vehicle loaned to her by an automobile dealer. The umbrella coverage was purchased by the dealer to provide for excess coverage of $2,000,000. *Id.* at 269, 671 A.2d at 698. The court held that the driver was not an insured under the "umbrella" portion of the policy; the insured was not a named insured, nor was she an employee, officer, or director. The court also held that the escape clause was not invalid because it required the insurance company to provide coverage to insureds in an amount consistent with the minimum required liability limits. *Id.* at 271–72, 671 A.2d at 699 ("An insurer certainly does not expect to assume the uncertain risk of providing unlimited coverage to unknown persons, i.e., those required by law to be insured."). *Bowers* was consistent with public policy, setting forth minimum limits required under the jurisdiction. In this case, Defen-

dant seeks to cap the coverage and allocate payment through pro-ration which has not been explicitly accepted under the statute or by caselaw.

Because (1) this Court finds Defendant's policy does not provide for a provision allowing it to set off payment through contribution pro rata and (2) Defendant's policy violates public policy, Defendant's counterclaim does not state a claim upon which relief may be granted. Accordingly, Plaintiffs' motion to dismiss count II of Defendant's counterclaim will be granted.

An appropriate order will follow.

### ORDER

NOW, this 4th day of May, 2001, upon consideration of Plaintiffs' Motion to Dismiss Defendant's Counterclaim (Doc. 5) IT IS HEREBY ORDERED Plaintiffs' motion to dismiss counts I and II of the counterclaim is **granted.**

---

4. The clause in *Bowers* is as follows:
 With respect to persons or organizations required by law to be an INSURED, the most WE will pay is that portion of such limit needed to comply with the minimum limits provision of such law in the jurisdic-
 tion where the OCCURRENCE took place. When there is other insurance applicable, WE will pay only the amount needed to comply with such minimum limits. 448 Pa.Super. at 271, 671 A.2d at 698–99.