**ST. PAUL MERCURY INSURANCE COMPANY, Plaintiff,**

v.

**Timothy PERRY and Donna Perry, Defendants.**

**Civil Action No. 01–4992.**

United States District Court, E.D. Pennsylvania.

Oct. 15, 2002.

---

Allan C. Molotsky, Post & Schell, P.C., Philadelphia, PA, for Plaintiff.

Robert F. Stranick, Black and Associates, P.C., Media, PA, for Defendants.

## MEMORANDUM

BAYLSON, District Judge.

This case involves whether an insurance company is obligated to pay uninsured motorist benefits to policyholders involved in an accident in a vehicle covered under a different policy. This declaratory judgment action has been brought before the Court by plaintiff St. Paul Mercury Insurance Company's ("Plaintiff"), and defendants Timothy and Donna Perry's ("defendants") cross-motions for summary judgment. Oral arguments were heard on September 13, 2002. For the reasons which follow, Plaintiff's Motion for Summary Judgment will be granted.

### I. Background

The parties have stipulated to the following facts. Plaintiff issued an antique automobile policy to defendants with a policy period running from October 15, 1999 through October 15, 2000. The policy covered a 1966 Ford F150 pickup truck owned by defendants and included uninsured motorist ("UM") limits of $300,000 per occurrence.

On December 23, 1999, Donna Perry was in Sharon Hill, Pennsylvania, driving her 1988 Chevrolet Camaro, a vehicle which she owned and insured through a separate insurance policy issued by AAA Mid–Atlantic Insurance Company. Her husband, Timothy Perry, was a passenger. The car was struck by an uninsured vehicle, and Timothy Perry sustained injuries as a result of the collision.

After exhausting their $300,000 UM benefits under their AAA Mid–Atlantic policy, Def.'s Mot. for Summ. J. at 7, defendants made a UM claim under their antique automobile policy with Plaintiff. Plaintiff initiated action in this Court, seeking a declaratory judgment that it is not liable to defendants for UM benefits. Defendants and Plaintiff then filed Cross–Motions for Summary Judgment, which are now before this Court.

### II. Legal Standard and Jurisdiction

The standards by which a court decides a summary judgment motion do not change when the parties file cross-motions. *Southeastern Pa. Trans. Auth. v. Pennsylvania Pub. Util. Comm'n*, 826 F.Supp. 1506, 1512 (E.D.Pa.1993). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the

burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

Plaintiff is a corporation organized and existing under the laws of the State of Minnesota. Defendants are citizens of and reside in the Commonwealth of Pennsylvania. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. Venue is proper under 28 U.S.C. § 1391(a).

### III. *Analysis*

This diversity action is governed by substantive state law. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When ascertaining Pennsylvania law, the decisions of the Pennsylvania Supreme Court are the authoritative source. *See State Farm Mut. Automobile Ins. Co. v. Coviello,* 233 F.3d 710, 713 (3d Cir.2000) (citing *Connecticut Mut. Life Ins. Co. v. Wyman,* 718

F.2d 63, 65 (3d Cir.1983)). If the Pennsylvania Supreme Court has not yet passed on an issue, then this court will consider the pronouncements of the lower state courts. *See id.*

### A. *Plaintiff's Arguments*

#### 1. *Plaintiff Not Obligated to Provide UM Benefits to Defendants*

■ Plaintiff asserts that it is not obligated to provide UM benefits to Defendants under the terms of its policy. The relevant portions of the antique automobile policy follow:

The UM endorsement to the policy provides:

> "A. We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury':
> 1. Sustained by an 'insured'; and
> 2. Caused by an accident."

Stipulation of Facts Ex. D at 1.

The UM endorsement to the policy defines "insured" as follows:

> " 'Insured' as used in this endorsement means:
> 1. You or any 'family member';
> 2. Any other person 'occupying' 'your covered auto.'
> 3. Any person for damages that person is entitled to recover because of 'bodily injury' to which this coverage applies sustained by a person described in 1. or 2. above."

*Id.*

Endorsement 50912 to the policy amends the UM endorsement as follows:

> "The definition of 'Insured' as used in the Uninsured Motorists Coverage (Stacked) Insuring Agreement is amended to read as follows:

'Insured' as used in this endorsement means:

1. Any person occupying 'your covered auto'.
2. Any person for damages that person is entitled to recover because of 'bodily injury' to which this coverage applies sustained by a person described in 1. above."

Stipulation of Facts Ex. E.

Specifically, Plaintiff refers to Endorsement 50912 to demonstrate that an insured can properly receive coverage only if occupying the antique auto covered under the policy. Plaintiff contends that since Defendants at the time of the accident were not occupying the antique automobile covered under their policy that they are not entitled to UM coverage.

In *St. Paul Mercury Ins. Co. v. Corbett*, 428 Pa.Super. 54, 630 A.2d 28 (1993), the Pennsylvania Superior Court considered an antique auto policy similar to the one at issue and found that coverage was not applicable. In *Corbett*, the defendant had been injured while operating a vehicle owned and insured by his employer when he was struck by a hit-and-run vehicle. *Id.* at 29. He recovered UM benefits under his employer's automobile policy and then sought coverage under three other policies, one of which was an antique automobile policy. *Id.* The plaintiff insurance company filed a declaratory judgment action seeking a declaration that it was not obligated to provide UM coverage to the defendant because he was not operating the antique automobile at the time of his accident. *Id.*

The Court found that the defendant was not entitled to UM benefits under the antique automobile policy because in order to be a "covered person" under the policy, it was necessary for the named insured to be occupying the covered vehicle at the time of the accident. *Id.* at 31. Part of the Court's rationale follows:

"The very limited use of antique automobiles does not subject them to the normal exposure or danger from uninsured motorists. These vehicles are seldom driven on highways for fear of wear and tear or breakdown. In fact, owners of antique automobiles often have their antique cars transported on flatbed trucks. Because of the decreased risks associated with antique vehicles, premiums for these special insurance policies are lower than those for personal automobile policies. To invalidate the restrictions found in the policy would force insurance companies to raise rates on antique automobile policies to account for the attendant increased risks. If coverage is permitted under the circumstances presented here, the distinctions between antique automobile insurance and other types of insurance will be eradicated and premiums for antique vehicle insurance will be on par with personal automobile insurance. This result was not contemplated by the Legislature in enacting the MVFRL." (Citations omitted.)

"Finally the fact that Pennsylvania provides for special registration plates and fees for antique automobiles and proscribes certain uses of such vehicles also illustrates the Legislature's intent to maintain distinct classifications of automobiles. Different classifications of automobiles have different insurance needs. In this case, the antique policy issued to Corbett was not meant to compensate the insured or a covered person in an accident involving an uninsured motor vehicle unless that uninsured motor vehicle hits the antique car. Based on the foregoing, we do not find that this definition of 'uninsured motor vehicle' in the insurance agreement offends public policy." (Citations omitted.)

*Id.* at 32–33.

In this case, the policy issued by Plaintiff was specifically designed to cover only

a limited use antique automobile. Stipulation of Facts Ex. B. Additionally, just as the Court pointed out in *Corbett,* Defendants here paid dramatically lower premiums for UM coverage of their antique automobile than they did for their regularly used vehicles. In *Corbett,* the antique automobile policy premium was only $6 per year for $50,000 in UM coverage. *Corbett,* 630 A.2d at 32. Defendants in the instant case paid just $5.50 per year for $300,000 in UM coverage on their antique automobile policy. Stipulation of Facts Ex. A. In contrast, Defendants paid $76 per year for $300,000 in UM coverage for each of their two vehicles insured with AAA Mid–Atlantic, including the vehicle involved in the accident at issue. Stipulation of Facts Ex. C.

The other reported Pennsylvania cases involving antique automobile policies can be distinguished from the instant case. In *Quinney v. American Modern Home Ins. Co.,* 145 F.Supp.2d 603, 605 (M.D.Pa.2001), the Court found that underinsured motorist ("UIM") coverage existed where an insured who had UIM coverage for his antique automobiles sought UIM benefits under that policy for an accident in which his minor son was killed while a passenger in a vehicle owned and insured by third parties. The policy at issue defined "insured" as "1. [y]ou or any 'family member'; 2.[a]ny other person 'occupying' 'your covered auto.'" *Id.* at 607. The Court reasoned that "[y]ou or any 'family member'" was separate and distinct from "[a]ny other person 'occupying' 'your covered auto'" and therefore UIM coverage extended to "[y]ou or [a]ny 'family member'" regardless of whether they occupied the covered vehicle. *Id.* at 607–08.

Likewise, in *Zurich Ins. Co. v. Lobach,* No. 97–3281, 1997 WL 535185, at *3–*4 (E.D.Pa. Aug.5, 1997), the Court found

that due to the placement of semicolons between paragraphs one and two in the definition of "insured," which was identical to the definition in *Quinney,* the two paragraphs were to be read separately, and the daughter of the insured would qualify as a family member covered under the policy.

However, neither *Quinney* nor *Lobach* included policy language like Endorsement 50912 in the instant case, which amended the definition of insured to "[a]ny person occupying 'your covered auto.'" This plain and unambiguous language should be given its clear meaning. Therefore, since Defendants were not occupying the covered vehicle at the time of the accident, they are not entitled to UM benefits.

### 2. *Dispute Not Subject to Arbitration*

■ Plaintiff asserts that this dispute is not subject to arbitration and is properly before this Court. The arbitration provision in the policy states the following:

"A. If we and an 'insured' do not agree:

1. Whether that person is legally entitled to recover damages from the owner or operator of an 'uninsured motor vehicle'; or

2. As to the amount of damages; either party may make a written demand for arbitration. Arbitration shall be conducted in accordance with the provisions of the Pennsylvania Uniform Arbitration Act. Each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction."

Stipulation of Facts Ex. D.[1]

■ "Under Pennsylvania law, the determination of whether an issue must be

---

**1.** In *Ohio Cas. Group of Ins. Companies v.* *Werley,* C.A. No. 01–7257, 2002 WL 31148309

submitted to arbitration depends on two factors: (1) whether the parties entered into an agreement to arbitrate, and (2) whether the dispute falls within the scope of that agreement." *Nationwide Insurance Co. v. Patterson*, 953 F.2d 44 (3d Cir.1991).

Plaintiff notes that at no time have Defendants asserted a right to arbitration, filed a motion to compel arbitration, nor asserted arbitration as an affirmative defense, and that as a result Defendants have waived their right to arbitrate. Pl.'s Mot. for Summ. J. at 13; Def.'s Answer to Pl.'s Compl.

■ In *Blocker v. Providian Life & Health*, No. 99–2201, 2001 WL 43644, at *1, 2001 U.S. Dist. LEXIS 400, at *2 (E.D. Pa. Jan 2, 2001), the defendant employer waited until the summary judgment stage of litigation before suggesting that the case be submitted to arbitration, thirteen months after the matter was initiated. The Court specifically noted that the parties had to actively litigate the matter, thereby incurring costs and counsel fees during the course of litigation, and that these costs could have been avoided had the defendant sought to compel arbitration during the initial stages of litigation. *Id.* at *3, 2001 U.S. Dist. LEXIS 400, at *9. The Court noted the "strong preference for arbitration," *id.* at *2, 2001 U.S. Dist. LEXIS 400, at *6 (citing *PaineWebber, Inc. v. Faragalli*, 61 F.3d 1063, 1068 (3d Cir.1995)), but recognized that when a party delays in asserting its arbitration right and causes prejudice to the other party, a waiver of the request to arbitrate should be found. *Id.* at *2, 2001 U.S. Dist. LEXIS 400, at *8. The following factors should be examined to determine if prejudice exists:

"(1) the timeliness or lack thereof of a motion to arbitrate,

(2) the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims,

(3) whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings,

(4) its assent to the district court's pretrial orders, and

(5) the extent to which both parties have engaged in discovery."

*Id.* at *2, 2001 U.S. Dist. LEXIS 400, at *8 (citing *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 926–27 (3d Cir. 1992)). Because the defendant did not assert its right to arbitrate until filing its motion for summary judgment, which included substantive arguments, the plaintiff policyholder was forced to reply and expose its legal theories of the case. *Id.* The Court noted that the defendant "would receive an unfair advantage if Plaintiff were forced to arbitrate his claims after having been forced to reveal his entire case in this fashion." *Id.* at *3, 2001 U.S. Dist. LEXIS 400, at *9–*10. The Court decided that the defendant was not enti-

(E.D.Pa. Sept.24, 2002), this Court examined an arbitration clause similar to the provision in the instant case. However, in *Werley*, the defendant, the son of the policyholder, demanded arbitration to determine if he was eligible to receive UIM benefits under his father's automobile insurance policy and designated an arbitrator to decide the case. *Id.* at *1. In the instant case, Defendants' failure

to demand arbitration, discussed *infra*, serves as a waiver. Also, the policy in *Werley* did not include an endorsement such as Endorsement 50912 in this case, which is dispositive, as discussed *infra*, in determining that the policyholders in the instant case do not qualify as "insureds" under the terms of the antique automobile policy endorsement.

tled to arbitration. *Id.* at *3, 2001 U.S. Dist. LEXIS 400, at *10.

In the instant case, there is no dispute as to whether Defendants are entitled to recover from the driver of the uninsured vehicle or what the damages should be. Indeed, Defendants have already recovered under their policy with AAA Mid-Atlantic. Def.'s Mot. for Summ. J. at 7. The only dispute involves whether Defendants are covered under the UM endorsement contained in the antique auto policy. Defendants have offered no evidence to contradict Plaintiff's contention that arbitration is inappropriate.

Plaintiffs also rely on a recent case in which the Third Circuit considered an arbitration provision similar to the one in the instant case. In *State Farm Mut. Automobile Ins. Co. v. Coviello*, 233 F.3d 710 (3d Cir.2000), the defendant was injured in a one-vehicle accident in which her husband was the driver. The defendant made a liability claim against her husband on a jointly held policy covering the vehicle involved in the accident. *Id.* at 712. After recovering the available liability limits, the defendant made a claim for UIM benefits under a policy held by her daughter. *Id.* The insurance company denied coverage on the basis of a family vehicle exclusion in the policy. *Id.*

The arbitration clause at issue in *Coviello* provided that arbitration was required when the insured and insurer did not agree whether the insured was entitled to compensatory damages and the amount of those damages. *Id.* at 717. The decision of the arbitrator "shall be limited to these two questions." *Id.* The Court held that the specific dispute between the insured and the insurer revolved around the applicability of the exclusion within the policy and therefore did not implicate the arbitration provision. *Id.* The Court distinguished *Coviello* from *Brennan v. General*

*Accident Fire and Life Assurance Corp.*, 524 Pa. 542, 574 A.2d 580 (1990) because the arbitration clause in *Brennan* was not as limited as the one in *Coviello*. *Id.* at 718–19. The Court decided that where the insurance policy expressly limits the applicability of the arbitration clause to disputes over whether the insured is legally entitled to compensation from an owner or operator of an uninsured or underinsured vehicle and disputes over the amount of compensation, pure coverage questions are not to be arbitrated. *Id.* at 719.

The clause in the instant case states that "either party may make a written demand for arbitration" if they do not agree whether the insured can recover damages and the amount of damages. Stipulation of Facts Ex. D at 3. It does not contain any of the limiting language found in the policy in *Coviello*. However, Defendants have waived their right to arbitrate by waiting until the summary judgment stage of litigation to assert arbitration, and the language of Endorsement 50912 is dispositive as to Defendants not qualifying as "insureds" under the terms of the policy endorsement, so arbitration is not appropriate in this case.

### B. *Defendants' Arguments*

#### 1. *Defendants Assert Policy Exclusion Violates Public Policy*

Defendants argue that the "family use" exclusion in this case is void and unenforceable under the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. Cons.Stat. Ann. § 1700 *et seq.*, and the public policy considerations of the General Assembly in enacting the MVFRL. They claim that despite the fact that the Pennsylvania Supreme and Superior Courts repeatedly have upheld policies containing "family use" exclusions, that those courts have never addressed the issue of the enforce-

ability of the "family use" exclusion in an insurance policy under the specific facts presented in this case. Def.'s Mot. for Summ. J. at 10.

The principal cases upholding the "family use" exclusion in insurance policies in cases involving UM or UIM coverage are aptly summarized in Judge Newcomer's recent opinion in *Royal Insurance Company of America v. Beauchamp*, No. 01–5657, 2002 WL 734344, at \*2–\*5, 2002 U.S. Dist. LEXIS 7239, at \*7–\*13 (E.D.Pa. Apr. 25, 2002). *Beauchamp* also upheld a "family use" exclusion and in doing so referred to the district court and state cases which have also upheld such exclusions. *See id.* (discussing with approval *Shelby Casualty Insurance Co. v. Statham*, 158 F.Supp.2d 610 (E.D.Pa.2001); *Liberty Mutual Insurance Co. v. Wark*, No. 00–841, 2000 WL 1539083, 2000 U.S. Dist. LEXIS 15175 (E.D.Pa. Oct. 19, 2000); *Nationwide Mutual Insurance Co. v. Ridder*, 105 F.Supp.2d 434 (E.D.Pa.2000); *Eichelman v. Nationwide Insurance Co.*, 551 Pa. 558, 711 A.2d 1006 (1998); *Hart v. Nationwide Insurance Co.*, 541 Pa. 419, 663 A.2d 682 (1995); *Windrim v. Nationwide Insurance Co.*, 537 Pa. 129, 641 A.2d 1154 (1994); *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234 (1994)).

Defendants claim this case can be distinguished from prior decisions regarding the "family use" exclusion because Defendants insured all of their vehicles; they paid additional premiums to purchase UM benefits under each policy; and they are not seeking benefits from a policy issued to a family member. Def.'s Mot. for Summ. J. at 14.

Defendants contend that in passing the MVFRL, the General Assembly intended to stop the spiraling cost of automobile insurance by preventing uninsured individuals, who were contributing nothing to the insurance pool, from recovering benefits and compelling them to purchase coverage. *See Allen v. Erie Insurance Co.*, 369 Pa.Super. 6, 534 A.2d 839 (1987).

Defendants then rely heavily on *Burstein v. Prudential Property and Casualty Insurance Co.*, 742 A.2d 684 (Pa.Super.1999), *appeal granted*, 563 Pa. 670, 759 A.2d 919 (Pa. July 6, 2000), in which the Superior Court discussed public policy considerations and voided the "regularly used, non-owned car" exclusion, which differs from the "family use" exclusion, on the grounds that it violated public policy. However, during the pendency of this action, the Pennsylvania Supreme Court reversed the Superior Court's decision and held that the exclusion of UIM coverage for injuries while operating a regularly used, non-owned car did not violate public policy. *Burstein v. Prudential Property and Casualty Insurance Co.*, 809 A.2d 204, 210 (Pa.2002). Interestingly, in *Burstein*, the insureds argued, as Defendants argue here, that they paid for liability, UM, and UIM coverage on all of their vehicles, and therefore the public policy purpose of the MVFRL was achieved. *Id.* at 208 n. 6. However, the Court did not find the insureds' coverage from their other policies relevant to the actual vehicle involved in the accident, which did not have UM or UIM coverage. *Id.*

Defendants' view of the issue as a "family use" exclusion is questionable. While the language of Endorsement 50912 specifically removes "family member" from the definition of "insured," the language of "family use" exclusions is quite different.

Plaintiff vehemently denies that this case involves a "family use" exclusion or any exclusion for that matter. Pl.'s Resp. to Def.'s Mot. for Summ. J. at 1–6. Plaintiff asserts that defendants simply do not qualify as "insureds" under the antique automobile policy. Pl.'s Resp. to Def.'s Mot. for Summ. J. at 5. Plaintiff points out

that "family use" exclusions in other policies are worded differently. Defendants contradict their own argument when they state that they "are not seeking to recover benefits from a policy issued to a family member". Def.'s Mot. for Summ. J. at 10. The core of a "family use" exclusion case involves a party seeking to recover benefits from a policy issued to a family member. Defendants are correct that they are not doing that here, so it does not follow that this case implicates the "family use" exclusion. In any case, the Pennsylvania courts have consistently upheld "family use" exclusions as consistent with public policy.

### 2. Defendants Claim They Are Entitled to Coverage Under Policy

■ Defendants argue that they are entitled to UM coverage under the policy. They support this contention by pointing to the following language in the MVFRL:

"(a) General rule.—Where multiple policies apply, payment shall be made in the following order of priority:

(1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.

(2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured."

75 Pa. Cons.Stat. Ann. § 1733.

Defendants claim that this language is clear and unambiguous and entitles them to UM benefits. However, the Court in *Burstein* noted that "under the MVFRL, UM and UIM benefits do not necessarily 'follow the person' in the same manner as first party benefits." *Burstein*, 801 A.2d at 521. The Court further noted that although "Section 1733 contemplates that UM and UIM coverage may be portable in some instances, it does not suggest that UM or UIM coverage would extend where the coverage has been specifically excluded, as is the case here." *Id.* at 521 n. 7.

Defendants are not insureds under the terms of the policy because they were not occupying the vehicle at the time of the accident and therefore § 1733 would not apply.

■ Defendants further assert that the policy language in Endorsement 50912 is ambiguous because of its reference to stacking. Def.'s Mot. for Summ. J. at 24. They claim that stacking only applies when there are multiple vehicles insured under the policy and coverage can be stacked. *Id.* Defendants assert that the remaining language in the policy does not reference stacking, but it clearly does. Stipulation of Facts Ex. D. ("Uninsured Motorists Coverage—Pennsylvania (Stacked)"). Defendants claim that the language is therefore ambiguous, and if reasonable interpretations are offered by both the insured and the insurer, the language should be construed against the insurer. *See Medical Protective Company v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999). They urge that Endorsement 50912 be disregarded, thereby making Defendants insureds entitled to UM benefits under the policy.

This bald assertion of ambiguity is unsupported by any evidence. When looking at the UM policy as a whole, including the endorsement, there is no ambiguity.

### 3. Defendants Contend that Parties Must Proceed to Arbitration

Defendants assert that the parties must proceed to arbitration pursuant to the terms of the policy on the issue of damages.

Defendants request that this Court enter an order "directing that the parties proceed with arbitration pursuant to the terms of the St. Paul policy on the issue of damages only." Def.'s Mot. for Summ. J.

**440**

at 5. However, this naked request is never discussed in Defendants' substantive arguments contained in their Motion for Summary Judgment. Indeed, the previous one-sentence reference is the only time Defendants mention arbitration. Plaintiff's Motion for Summary Judgment extensively addresses the arbitration issue and demonstrates that arbitration is not proper in the instant case. *See* Plaintiff's Arguments III.A.2, *supra.* Defendants offer no record evidence supporting their contention that this matter should be arbitrated.

## IV. *Conclusion*

For the reasons discussed above, Plaintiff's Motion for Summary Judgment will be granted, and Defendants' Motion for Summary Judgment will be denied.