720 A.2d 447

Dennis DONNELLY, Appellant,

v.

Debra BAUER, Appellee.

Francis and Kathy HAVEL, Appellants,

v.

Lorriane McCARRY, Appellee.

Roberto HENNINGHAM, Appellant,

v.

Nong PHEACH, Appellee.

Joan P. WILLIAMS and Barbara Merriweather
and Denise Williams and Helene Savage,

v.

Mary Sandra SHEMONSKY.

Appeal of Barbara MERRIWEATHER.

Mervis M. URQUHART and DeWayne Dixon, a minor, by his
Parent and Natural Guardian, Mervis M. URQUHART and
Mervis M. Urquhart in her own right, Appellants,

v.

Marla MEDNICK, Appellee.

Julia TRULEAR,

v.

Roger TRULEAR,

v.

Bessie LAYTON.

Appeal of Julia TRULEAR.

Francisco HIGUITA and Rosalba Higuita, Appellants,

v.

Hai Son DINH, Appellee.

Supreme Court of Pennsylvania.

Argued Dec. 8, 1997.

Decided Sept. 29, 1998.

Mitchell S. Clair, Nicholas J. Oritz, Philadelphia, James R. Ronca, Harrisburg, Richard M. Golomb, Philadelphia, for Dennis Donnelly.

Michael E. Kosik, Harrisburg, Amicus-Pa. Trial Lawyers.

Joseph M. Hankins, Wayne A. Schaible, Lise Luborsky, Philadelphia, John J. McGrath, Jr., Joseph J. Urbain, Peter J. Hoffman, Philadelphia, for Deborah Bauer.

Joseph E. Mayk, Philadelphia, Amicus-Assigned Risk Plan.

Scott J. Tredwell, Amicus-Pa. Ins. Federation of Pa. and Nat. Assoc. of Independent Insurers and Pa. Defense Institute.

Terrence A. Keating, Harrisburg, Amicus-Pa. Ins. Dept.

Mitchell S. Clair, Richard M. Golomb, Edwin L. London, Philadelphia, James R. Ronca, Harrisburg, for Francis and Kathy Havel.

Joseph M. Hankins, Wayne A. Schaible, Lise Luborsky, Robert J. Casey, Jr., Philadelphia, for Lorraine McCarry.

David Levenberg, Mitchell S. Clair, Philadelphia, for Robert Henningham.

Joseph D. Mancano, Philadelphia, for Nong Pheach.

David Levenberg, Mitchell S. Clair, Richard M. Golomb, Philadelphia, James R. Ronca, Harrisburg, for Barbara Merriweather.

Daryl W. Winston, Philadelphia, for Mary Sandra Shemonsky.

Michael B. Krupnick, Mitchell S. Clair, Philadelphia, James R. Ronca, Harrisburg, for Mervis M. Urquhart and Dewayne Dixon.

Amy Loperfido, Philadelphia, for Marla Mednick.

David Levenberg, Mitchell S. Clair, Philadelphia, James R. Ronca, Harrisburg, for Julia Trulear.

Stephen J. Margolin, Philadelphia, for Roger Trulear.

James Stover, Philadelphia, for Bessie Layton.

Barbara M. Daly, Philadelphia, for Francisco and Rosalba Higuita.

Robert J. Casey, Philadelphia, for Hai Son Dinh.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### OPINION OF THE COURT

CASTILLE, Justice.

The sole issue in these consolidated appeals is whether the Motor Vehicle Financial Responsibility Law ("MVFRL")[1] requires that an individual, who applies for an original insurance policy after July 1, 1990, be provided with a specific form

1. 75 Pa.C.S. §§ 1701 *et seq.*

which contains premium information for both the full and limited tort options. While we find that the plain language of the MVFRL requires an individual purchasing an original insurance policy after July 1, 1990 to receive such premium information, we nevertheless affirm the order of the Superior Court because the MVFRL fails to provide a remedy to an individual who does not receive this information.

An understanding of the specific facts particular to each appellant is not necessary for purposes of this appeal. Instead, one must understand the general facts concerning appellants' original purchase of automobile insurance.

In the appeal *sub judice*, there are two general factual scenarios regarding the original purchase of automobile insurance. Appellants Havel, Urquhart and Trulear all purchased original automobile insurance policies with the insurance company of their choice after July 1, 1990.[2] When each appellant applied for their original insurance policies, they received a notice required by 75 Pa.C.S. § 1791.1 which explained the difference between the limited tort option and the full tort option. The notice each appellant received did not contain any premium or cost comparison between the limited tort option and the full tort option. After receiving these notices, each of these appellants elected the limited tort option offered by each insurance company. The purchase of the "limited tort" option allowed appellants to reduce their insurance premium. In return for this reduced premium, appellants were generally precluded from recovering for a non-economic loss[3] unless they sustained a "serious injury"[4] from an accident. 75 Pa.C.S. § 1705(d).

---

2. Havel applied for an original insurance policy with Allstate Insurance Company on May 2, 1992. Urquhart applied for insurance with American Independent Insurance Company on January 27, 1993. Trulear applied for insurance with American Independent Insurance Company on January 21, 1993.

3. The MVFRL defines a non-economic loss as "pain and suffering and other nonmonetary detriment." 75 Pa.C.S. § 1702.

4. A "serious injury" is defined by the MVFRL as "a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. § 1702.

Appellants Donnelly, Henningham and Merriweather did not purchase their insurance policies directly through a private insurer. Instead, each of these three appellants received their original insurance after July 1, 1990 through Pennsylvania's Assigned Risk Plan.[5] When deciding whether to select the limited tort option or the full tort option, each of these three appellants received and signed Form PA–1000. This Form PA–1000 was issued by the assigned risk plan and contained virtually the same information contained in the notice required by 75 Pa.C.S. § 1791.1. Thus, the appellants participating in the assigned risk plan did not receive a premium or cost comparison between the limited tort option and the full tort option.

Subsequent to the purchase of insurance, each appellant was involved in an automobile accident. As a result of their accidents, appellants instituted a lawsuit against the respective appellee in each case on this appeal. Appellants filed motions *in limine* prior to trial seeking to preclude appellees from raising the limited tort waiver defense. In essence, appellants sought to invalidate their limited tort selections on the grounds that their insurance companies had failed to provide the proper notice before the purchase of insurance that is required by 42 Pa.C.S. § 1705. The notice required by 42 Pa.C.S. § 1705(a)(1) must contain the annual premium which an insured would incur if he purchased the limited tort option or the full tort option.

Appellants' motions *in limine* were consolidated in the trial court pursuant to Philadelphia Civil Rule 206.2 and the Administrative Order of the Honorable Alex Bonavitacola. The trial court, after reviewing the above-referenced statutory provisions and the purpose behind the enactment of the MVFRL, concluded that appellants' insurance companies were

5. The Pennsylvania Assigned Risk Plan, adopted by the Pennsylvania Insurance Department pursuant to 75 Pa.C.S. § 1741, provides for the equitable apportionment among insurers providing automobile insurance to Pennsylvania residents of applicants who are entitled to insurance but are unable to procure it through ordinary methods. All motor vehicle insurers offering insurance in Pennsylvania are required to participate in the Assigned Risk Plan.

required by law to issue a notice pursuant to 42 Pa.C.S. § 1705 containing the premium cost associated with choosing the limited tort option and the full tort option. The trial court based this conclusion on the trial court's public policy perception that consumer protection required notice of the cost comparison involved in choosing a particular option. Since the trial court determined that the insureds had not made valid and knowing elections of tort coverage, the trial court held that the full tort election applied and granted the motions *in limine. See* 75 Pa.C.S. § 1705(a)(3).[6]

After entering this order, the trial court certified the present cases for interlocutory appeal to the Superior Court. On March 6, the Superior Court granted permission to appeal. On October 29, 1996, an *en banc* Superior Court in a seven-to-three decision reversed the trial court. The Superior Court majority decision enforced appellants' limited tort selections because it found that the legislative design and administrative scheme formulated by the Insurance Department only required the cost comparison to be offered to insureds renewing their policy for the first time after July 1, 1990. Since appellants did not purchase their original insurance policy until after July 1, 1990, no premium comparison was required for appellants.[7] This Court granted allocatur in order to decide whether the MVFRL required appellants, who applied for an original insurance policy to be issued after July 1, 1990, to have been provided with a specific notice that contains premium information for both the full and limited tort options.

This Court begins its analysis by looking to the appellants who obtained their insurance through the voluntary market. In enacting the 1990 amendments to the MVFRL,[8] the Gener-

6. Section 1705(a)(3) provides, in pertinent part, that: "all notices required by this section shall advise that if no tort election is made, the named insured and those he is empowered to bind by his choice are conclusively presumed to have chosen the full tort alternative."

7. The three dissenting judges of the Superior Court believed that the trial court's interpretation of the statutory notice provision of the MVFRL was a reasonable and fair interpretation of the legislative intent behind the provisions.

8. Act of February 7, 1990, P.L. 11, No.6.

al Assembly sought to slow the rising cost of automobile insurance in the Commonwealth. As part of this plan, the General Assembly gave each individual the ability to choose full tort or limited tort coverage. As previously described, the limited tort option gave an individual lower premiums in return for relinquishing the right to seek recovery for non-monetary damages while an individual choosing the full tort option did not receive as great of a premium reduction since he still had the ability to recover non-monetary damages. As part of the 1990 amendments to the MVFRL, an individual selecting the limited tort option was to receive a twenty-two percent (22%) reduction in his total premium for the same coverage prior to the amendments while a person choosing the full tort option was to receive a ten percent (10%) premium reduction. 75 Pa.C.S. § 1799.7(b)(1) & (2).

When enacting this plan to provide rate reductions, the General Assembly provided mechanisms by which consumers were to be alerted of their available options. Section 1705(a)(1) of Title 75 provides:

(a) **Financial responsibility requirements.-**

(1) Each insurer, not less than 45 days prior to the first renewal of a private passenger motor vehicle liability insurance policy on and after July 1, 1990, shall notify in writing each named insured of the availability of two alternatives of full tort insurance and limited tort insurance described in subsections (c) and (d). The notice shall be a standardized form adopted by the Commissioner and shall include the following language:

## NOTICE TO NAMED INSUREDS

A. **"Limited Tort" Option-** The laws of the Commonwealth of Pennsylvania give you the right to a choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket

expenses, but not for pain and suffering and other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy or unless one of several other exceptions noted in the policy applies. The annual premium for basic coverage as required by law under this "limited tort" option is $_____

Additional coverages under this option are available at additional cost.

**B. "Full Tort" Option-** The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers. The annual premium for basic coverage as required by law under this "full tort" option is $_____

75 Pa.C.S. § 1705(a)(1). The parties to this appeal agree that Section 1705(a)(1), standing alone, only required insurers to notify existing policy holders of the available tort options and the annual premium for each tort option.

Section 1791.1(b) of Title 75 reads similar to Section 1705(a)(1).[9] However, Section 1791.1(b) does not include any

**9.** Section 1791.1(b) of the MVFRL provides that:

In addition to the invoice required by subsection (a), an insurer must, at the time of the application for original coverage for private passenger motor vehicle insurance and every renewal thereafter, provide to an insured notice of the availability of two alternatives of full tort insurance and limited tort insurance described in section 1705(c) and (d) (relating to election of tort options):

The laws of the Commonwealth of Pennsylvania give you the right to choose either of the following two options:

**A. "Limited Tort" Option.-** This form of insurance limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering and other nonmonetary

language pertaining to a first renewal on or after July 1, 1990, and it does not include any requirement that an individual receive information on the premium differential between the available tort options. The parties also agree that Section 1791.1(b), standing alone, only applied to an individual applying for original coverage on or after July 1, 1990.

While the parties agree as to the applicability of Section 1705(a)(1) and 1791.1(b), they diverge as to who must be notified by the provisions found at Section 1705(a)(4) of Title 75. Section 1705(a)(4) provides:

> Each insurer, prior to the first issuance of a private passenger motor vehicle liability insurance policy on or after July 1, 1990, shall provide each applicant with the notice required by paragraph (1). A policy may not be issued until the applicant has been provided an opportunity to elect a tort option.

75 Pa.C.S. § 1705(a)(4). Appellants argue that Section 1705(a)(4) requires an insurer to supply all applicants for automobile insurance, both original purchasers and those seeking renewals, with the notice containing the premium differential for each tort option that is required by Section 1705(a)(1). Conversely, appellees argue that Section 1705(a)(4) does not apply to original purchasers of automobile insurance. Instead, appellees argue that Section 1705(a)(4) was meant to apply only to existing policyholders as of July 1, 1990 who desired to have a new policy issued with the tort

damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy or unless one of several other exceptions noted in the policy applies.

**B. "Full Tort" Option-** This form of insurance allows you to maintain an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers.

If you wish to change the tort option that currently applies to your policy, you must notify your agent, broker, or company and request and complete the appropriate form.

75 Pa.C.S. § 1791.1(b).

options rather than wait until their renewal date to receive the tort options. Our determination of which class of individuals should receive a notice under Section 1705(a)(4) is guided by the Statutory Construction Act. *See* 1 Pa.C.S. §§ 1501 *et seq.*

The object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a). As this Court has noted, the repeal of the No–Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101, and the simultaneous enactment of the MVFRL, reflected a legislative "concern for the spiralling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways." *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 587, 640 A.2d 1234, 1235 (1994). This legislative concern over the increasing costs of automobile insurance is the public policy which is to be advanced when interpreting the statutory provisions of the MVFRL. *Id.*

Here, Section 1705(a)(4) requires that each applicant for insurance receive the notice required by Section 1705(a)(1) prior to the first issuance of a policy on or after July 1, 1990. While the terms "applicant" and "first issuance" are not defined by the MVFRL, the common meaning of "applicant" is a person asking for something [10] and "first issuance" is an initial outflow or passing out.[11] See 1 Pa.C.S.1903(a)(words not defined in statute shall be construed according to their common and approved usage). From these common meanings, it is clear that Section 1705(a)(4) does not differentiate between applicants renewing their insurance coverage and applicants seeking to obtain original coverage. Thus, the plain meaning of Section 1705(a)(4) is that any individual seeking to obtain coverage on or after July 1, 1990 should receive the premium differential notice required by Section 1705(a)(1). Therefore, since the wording of Section 1705(a)(4) is inclusive rather than exclusive, this Court holds that appellants, who were attempting to obtain original coverage after July 1, 1990,

10.  Webster's New World Dictionary (2d Ed.) at 67.

11.  Webster's New World Dictionary (2d Ed.) at 749.

should have received the premium differential notice required by Section 1705(a)(1).

■ In reaching this conclusion, the Court recognizes that its interpretation of Section 1705(a)(4) is inconsistent with regulations promulgated by the Insurance Commissioner at 31 Pa.Code § 68.102 and 68.107. Section 68.102 provides:

(b) Both the full tort and limited tort options shall be printed on the same sheet of paper. The form requires an indication of the dollar amount of savings that will be realized by the choice of the full tort or limited tort option. The dollar savings notification will offer an insured a way to compare the price of his current in-force policy with the same policy employing either the minimum 10% full tort or 22% limited tort cost savings mandated by the act of February 7, 1990 (P.L. 11, No. 6) (Act 6). *The term "basic coverage," as used in this notice, means the coverage that the insured has in force at the time the notice is sent.*

31 Pa.Code § 68.102 (emphasis added). Section 68.107 provides:

**Section 1791.1(b)—notice of tort options.**

Notices for limited tort and full tort options are mandated for insureds. These forms are required for new business on or after July 1, 1990, and for renewal policies issued after the first renewal cycle following the initial notices required in 75 Pa.C.S. § 1705 (relating to election of tort options). The use of statutory language is required. These notices shall be sent with the annual renewal forms. As previously indicated, the annual renewal occurs at the annual anniversary date of the issuance of the original policy.

31 Pa.Code § 68.107. Moreover, an affidavit of the Deputy Insurance Commissioner at the time the regulations were issued stated that the Insurance Department viewed Section 1705(a)(4) as only applying to individuals who had insurance prior to July 1, 1990 and who sought to obtain the benefits of the tort options provided by the 1990 amendments to the MVFRL by having a new policy issued rather than waiting for their renewal period to arrive.

608

■ Courts traditionally accord an interpretation of a statutory provision by an administrative agency charged with administering that statute some deference. *Terminato v. Pennsylvania Nat. Ins. Co.*, 538 Pa. 60, 71, 645 A.2d 1287, 1293 (1994). However, the interpretation of a statute is a question of law for the Court to resolve and when the Court is convinced that the interpretive regulation adopted by the administrative agency is clearly erroneous or is violative of legislative intent, the Court disregards the administrative agency's regulation. *Philadelphia Suburban Corp. v. Bd. of Finance and Revenue*, 535 Pa. 298, 301–02, 635 A.2d 116, 118 (1993). As described above, the Insurance Commissioner's interpretation of the relevant statute in the case *sub judice* disregards the clear and plain meaning of 75 Pa.C.S. § 1705(a)(4). Thus, this Court finds that the Insurance Commissioner's interpretative regulation is erroneous and must be disregarded. It is for the legislature, not the courts or administrative agencies, to alter the construction of who must be afforded notice under 75 Pa.C.S. § 1705(a)(4). Therefore, this Court holds that the Superior Court erred in finding that appellants did not have to receive the premium differential notice that is contained in 75 Pa.C.S. § 1705(a)(1).

■ While this Court has held that appellants should have received the premium differential notice as required in 75 Pa.C.S. § 1705(a)(1) prior to the purchase of the original policy, this Court still must determine whether appellants are entitled to any remedy. Appellants argue that the trial court correctly held that pursuant to 75 Pa.C.S. § 1705(a)(3), appellants were deemed to have chosen the full tort option rather than the limited tort option which appellants actually elected to purchase and for which they paid. For the reasons described below, this Court disagrees.

In the recent case of *Salazar v. Allstate Ins. Co.*, 549 Pa. 658, 702 A.2d 1038 (Pa.1997), the named insured rejected uninsured/underinsured coverage when she originally purchased her insurance policy and she subsequently renewed her policy without making any changes. Residents living with the named insured were then involved in an accident and sought

uninsured benefits from the named insured's policy. The resident relatives sought benefits in spite of the named insured's initial waiver of this coverage because the insurer failed to comply with the notice requirements of 75 Pa.C.S. § 1791.1 when it sent the named insured renewal notices. This Court agreed with the resident relatives and held that since Sections 1731, 1791 and 1791.1 of the MVFRL must be read in pari materia, an insurer was required by Section 1791.1 to provide notice on renewal forms informing the named insured of his options at the time of renewal concerning the purchase of uninsured/underinsured coverage. However, even though this Court recognized that the insurer should have provided a Section 1791.1 notice at the time of renewal, the resident relatives were not entitled to such coverage because the MVFRL specifically failed to provide a remedy for an insurer's failure to comply with the Section 1791.1 notice requirement.

In the case *sub judice*, Section 1705(a)(3), upon which appellants rely, provides:

> If a named insured who receives a notice under paragraph (1) [75 Pa.C.S. § 1705(a)(1)] does not indicate a choice within 20 days, the insurer shall send a second notice. The second notice shall be in a form identical to the first notice, except that it shall be identified as a second and final notice. If a named insured has not responded to either notice ten days prior to the renewal date, the named insured and those he is empowered by this section to bind by his choice are conclusively presumed to have chosen the full tort alternative. All notices required by this section shall advise that if no tort election is made, the named insured and those he is empowered to bind by his choice are conclusively presumed to have chosen the full tort alternative. Any person subject to the limited tort option by virtue of this section shall be precluded from claiming liability of any person based upon being inadequately informed.

75 Pa.C.S. § 1705(a)(3). While Section 1705(a)(3) clearly governs an individual renewing his policy and his failure to make a choice, the situation faced by appellants is markedly differ-

ent. Here, appellants were purchasing original coverage, not renewing existing policies. Also, appellants, based on a notice which accurately described the tort alternatives available in all regards except for the absence of a cost comparison, freely chose the limited tort option and paid premiums in accordance with that choice, i.e., a premium lower than if they had chosen the full tort option. Based on these clear differences between appellants' situations and that contemplated by Section 1705(a)(3), this Court finds that Section 1705(a)(3) of the MVFRL does not provide a remedy to appellants. Moreover, this Court, like it did in *Salazar*, finds no remedy in any other provision of the MVFRL which would provide appellants who obtained coverage through the voluntary market with a remedy for their failure to receive a Section 1705(a)(1) notice with cost differentials from their insurers.

The decision that the MVFRL does not provide a remedy is also supported by the policy behind the enactment of the MVFRL and its amendments, to stem the rising cost of insurance in the Commonwealth. Here, appellants, based on a notice form which provided accurate information on the difference between the tort alternatives, freely chose the limited tort option. In making this free choice, appellants received a greater reduction in their premiums than if they had chosen the full tort option. Appellants were content with this lower premium and their choice until they unfortunately were involved in automobile accidents with appellees. Now, appellants seek to escape from what they freely chose and paid for in order that they may obtain a full tort recovery. If this Court were to fashion a remedy not expressly provided for in the MVFRL, this Court would essentially contravene the cost containment policy behind the MVFRL because allowing appellants the full tort coverage they seek would result in giving appellants something for which no individual has paid, which in turn, would result in insurance companies passing on this extra costs to all other insureds.[12]

12. As noted by the Superior Court, the facts surrounding the assigned risk appellants are virtually the same as above except that they received a PA–1000 notice rather than a Section 1791.1(b) notice. Since the MVFRL also does not provide a remedy to assigned risk individuals

Accordingly, for the reasons stated above, this Court finds that the Superior Court erred in basing its reversal of the trial court's order on the grounds that appellants were not required to receive notices containing cost differentials between full tort and limit tort coverage when they originally purchased their insurance policies after July 1, 1990. However, this Court affirms the Superior Court's reversal of the trial court because the MVFRL fails to provide a remedy for appellants' failure to receive the proper notice concerning tort alternatives and cost differentials. *See E.J. McAleer & Co., Inc. v. Iceland Products, Inc.,* 475 Pa. 610, 613 n. 4, 381 A.2d 441, 443 n. 4 (1977) (Supreme Court may affirm decision of any court below on any ground, without regard to grounds which the court below relied). Therefore, the order of the Superior Court is affirmed.

NEWMAN, J., files a dissenting opinion in which NIGRO, J., joins.

NEWMAN, Justice, dissenting.

I respectfully dissent because I cannot agree with the Majority that an insured party has no remedy when an insurance carrier fails to comply with the provisions of the Motor Vehicle Financial Responsibility Law ("MVFRL")[1] requiring it to provide customers with a notice setting forth the annual premiums for coverage under the limited and full tort options. In support of its position, the Majority cites this Court's decision in *Salazar v. Allstate Ins. Co.,* 549 Pa. 658, 702 A.2d 1038 (Pa.1997). In *Salazar,* the insured party, Mrs. Brown, waived uninsured motorist coverage when she first applied for automobile insurance. However, when the insurer renewed her policy, it neglected to send her a disclosure of premium charges and tort options form as required by Section

who did not receive a cost differential notice, the same reasoning above applies to affirm the order of the Superior Court as it relates to these individuals. Thus, this Court need not address the issue raised by appellees that the assigned risk plan is not an insurer for purposes of the notice provisions of Sections 1705(a) and 1791.1(b) of the MVFRL.

1. 75 Pa.C.S. § 1701 *et seq.*

1791.1. While Mrs. Brown's daughter Rita Salazar was driving her mother's car, accompanied by Celitia Salazar, a hit-and-run driver struck them. The Salazars brought an action against the insurance company seeking uninsured motorist benefits pursuant to Mrs. Brown's policy. They argued that because the insurer did not provide Mrs. Brown with the notice required by Section 1791.1, that they were entitled to such benefits. The trial court entered summary judgment in favor of the insurer, and the Superior Court affirmed. This Court recognized that the insurer breached its statutory duty to provide the appropriate renewal notice to the insured party, but held that the lack of an enforcement mechanism for this requirement in the MVFRL meant that the Salazars did not have a remedy.

In a dissenting opinion, which Mr. Justice Nigro joined, I agreed with the majority that Section 1791 should be read in pari materia with Section 1731(c.1), which provides that where an insurer fails to produce a valid form by which an insurer rejects uninsured motorist coverage, "coverage ... under that policy shall be equal to the bodily injury limits." 75 Pa.C.S. § 1731(c.1). The majority in *Salazar* held that the presence of a statutorily created remedy in Section 1731 implied that the lack of such a remedy in Section 1791 indicated that the appellants were not entitled to relief. I disagreed, noting that noncompliance with Section 1791 is as contrary to the MVFRL's goal of advising insured individuals of the benefits and limits under the Law as is noncompliance with Section 1731. In the instant matter, Section 1705(a)(3) provides that if an individual who is renewing a policy does not respond to two notices informing him or her of the tort options, "the named insured and those he is empowered by this section to bind by his choice are conclusively presumed to have chosen the full tort option alternative." 75 Pa.C.S. § 1705(a)(3). Consistent with the position I expressed in *Salazar*, I believe that the failure to provide a first-time purchaser of insurance with a cost comparison of the limited and full tort options is inimical to the aims of the MVFRL.

The majority states that its decision "is also supported by the policy behind the enactment of the MVFRL and its amendments, to stem the rising cost of insurance in the Commonwealth." Majority Opinion at 454. However, as I noted in the dissenting opinion in *Salazar* :

> The MVFRL does not contain a statement of findings and purpose. Prior to the 1990 amendments that rendered UM and UIM coverages optional, this Court stated that the legislature enacted the MVFRL to reduce the rising cost of automobile insurance and the resultant increase in uninsured motorists. *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234 (1994). Since the 1990 amendments, the Superior Court has held that one of the objects of the MVFRL is to afford the injured claimant the broadest possible coverage. *Motorists Ins. Co. v. Emig*, 444 Pa.Super. 524, 664 A.2d 559 (1995). In this way, the MVFRL is to be liberally construed.

*Id.* at 1048. Furthermore, as Judge Del Sole noted in his dissenting opinion in the instant matter, in which Judges Beck and Ford Elliott joined:

> It is apparent from the legislative discussions surrounding the passage of Act 6 that it was important to allow *informed* consumers to make choices about the insurance which would best suit their needs.... To protect consumers by providing them with information about their options necessitates that they be informed about the costs associated with each choice. The goal of providing for an informed consumer is not in conflict with the equally important goal of making automobile insurance more affordable and available. Both concerns were at work in the passage of Act 6.

*Donnelly v. Bauer*, 453 Pa.Super. 396, 683 A.2d 1242, 1251 (Pa.Super.1996) (Del Sole, J. dissenting).

The purposes of the MVFRL include "protect[ing] the consumer by providing him or her with sufficient information to intelligently and knowingly elect options or reject coverage upon the initial application and upon renewal," *Salazar*, 702 A.2d at 1049 (Newman, J. dissenting), and "provid[ing] the broadest possible coverage to injured parties," *Salazar*, 702

A.2d at 1050 (Newman, J. dissenting). Accordingly, I would hold that where an insurer fails to provide a consumer with the rate information required by Section 1791, that the insured party should be deemed to have selected the full tort option. For these reasons, I would reverse the order of the Superior Court and reinstate the trial court's order granting the Appellants' motion *in limine*.

NIGRO, J., joins in this dissenting opinion.

