J-A32021-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GEORGE KURUVILA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ARASU RAJARATNAM, | |
| Appellee | No. 421 EDA 2014 |

Appeal from the Judgment Entered March 28, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): May 2012 Term – No. 000450

BEFORE:  PANELLA, OLSON AND FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                **FILED APRIL 06, 2015**

Appellant, George Kuruvila, appeals from the judgment entered on March 28, 2014.  We vacate in part and remand.

On May 9, 2012, Appellant initiated the current action by filing a complaint against Arasu Rajaratnam (hereinafter "Defendant Rajaratnam").  Within his complaint, Appellant averred the following.

In September 1995, Appellant successfully bid, at a private auction, upon a seven-unit apartment building that was located at 229 West Harvey Street, in Philadelphia (hereinafter "the Property").  Appellant's Complaint, 5/9/12, at ¶¶ 4-5.  Appellant's winning bid for the Property was $51,500.00. ***Id.*** at ¶ 5.

"[Appellant] paid a deposit of $5,150[.00], representing 10% of the winning bid, and was given [approximately] one month to pay the balance of

---

* Former Justice specially assigned to Superior Court.

the purchase price." *Id.* at ¶¶ 5-6. In an attempt to pay the remaining amount owed, Appellant contacted Defendant Rajaratnam. Defendant Rajaratnam obtained the necessary financing and then paid the balance of the purchase price for the Property. *Id.* at ¶¶ 6-9.

On October 27, 1995, Appellant and Defendant Rajaratnam entered into a written contractual agreement in regards to the Property. *Id.* at ¶ 10. The brief contract reads:

> [Defendant Rajaratnam] and [Appellant] agree as follows:
>
>   RE:  [The Property]
>
> 1) Name of Corporation to own abovementioned property[] is to be called "Raj Villa" Corporation.
>
> 2) Our objective is to minimi[z]e costs, maximi[z]e returns.
>
> 3) [Defendant Rajaratnam] is to hand over 49% of total shares to [Appellant] within five [] working days from date of initial financing[.]
>
> 4) All decisions should be jointly made and approved jointly: major decisions in writing and signed by both parties.

Contract between Appellant and Defendant Rajaratnam, dated 10/20/95, at 1.

On January 15, 1996, Appellant and Defendant Rajaratnam elected to form a small business corporation named the "Raj Villa Corporation." Appellant's Complaint, 5/9/12, at ¶ 12. Defendant Rajaratnam received 51% of the shares of the corporation and was named the president of the corporation; Appellant received the remaining 49% of the corporate shares.

*Id.* at ¶¶ 10-12. However, as Appellant averred: "[Appellant] and [Defendant Rajaratnam] verbally agreed to share the [corporate] profits equally notwithstanding that [Defendant Rajaratnam] held 51% of the shares in the small business corporation." *Id.* at ¶ 13. Title to the Property was apparently transferred to the Raj Villa Corporation – and the Raj Villa Corporation then began to manage and rent units in the Property. *Id.* at ¶ 37; *see also id.* at "Exhibit 4."

As the trial court explained:

> Both parties managed the Property from October 1995 [] until September 1997, when [Appellant] permanently moved back to India.[1] [*Id.* at ¶¶ 18-19.] Defendant Rajaratnam kept all the financial records and books for the [Raj Villa] Corporation [and continued to manage] the Property after [Appellant's] departure. [*Id.* at ¶ 19.]
>
> Upon suffering losses, the [Raj Villa] Corporation listed the Property for sale in November 2005. [*Id.* at ¶¶ 20-21.] On or about February 27, 2006, the Property sold for $325,000[.00]. [*Id.* at ¶ 22.] In [May] 2006, [Appellant] first learned the Property was sold. [*Id.* at ¶ 23.] After the sale, Defendant Rajaratnam wire transferred [Appellant] $24,577.55[, which, according to Defendant Rajaratnam, represented] 49% of the [sale] proceeds. [*Id.* at ¶ 22; *id.* at "Exhibit 4."] Appellant received this money on May 10, 2006. *Id.* at ¶ 23].
>
> Once [he] receiv[ed] his share of the Property's sale proceeds, [Appellant] [e-mailed] and [telephoned] Defendant Rajaratnam[,] inquiring [as to] why he received

_____

[1] Appellant, an Indian national, resided in Philadelphia, Pennsylvania for approximately 18 years before he permanently returned to India in 1997. Appellant's Complaint, 5/9/12, at ¶ 1.

- 3 -

only $24,577.55 [given that] the Property [] sold for $325,000[.00]. [*Id.* at ¶ 25.] Defendant Rajaratnam provided [Appellant] with a Settlement Statement[, which] referenc[ed] three deductions [that were] taken from the gross amount of $325,000[.00]: (a) settlement charges to the seller in the amount of $157,966.03; (b) payoff of [the] existing loan to First Penn Bank in the amount of $118,238.05; and[,] (c) payoff of [the] existing loan to First Penn Bank in the amount of $150[.00]. [*Id.* at ¶ 25-26.] [However, "despite repeated requests from Appellant, Defendant Rajaratnam did not provide Appellant with any explanation or documents which evidenced how and why these deductions related to the management of the property nor did he explain why such a large amount of financing was obtained that had to be paid off at settlement." *Id.* at ¶ 27.] . . .

[Appellant] also requested Defendant Rajaratnam to provide a detailed and accurate written accounting of the sale proceeds and the income and operating expenses from the period the Property was owned and managed by the [Raj Villa] Corporation. [*Id.* at ¶¶ 28 and 36. In response, Defendant Rajaratnam supplied Appellant with a "purported balance sheet," which provided "only one line representing rental and other income for each year between 1995 through 2006 and [failed] to list the monthly income for each of the seven apartments during those years despite [Appellant's] repeated requests to Defendant [Rajaratnam] to provide this information." *Id.* at ¶ 38.]

Trial Court Opinion, 7/11/14, at 2-3.

On May 9, 2012 – which was approximately six years after Appellant first learned that the building was sold – Appellant initiated the current action by filing a complaint against Defendant Rajaratnam. The complaint listed the following six counts:

- Count 1: Accounting (claiming that Appellant is entitled to an equitable accounting, directing Defendant Rajaratnam to "account to [Appellant] [] all monies received from the management of the property, including

but not limited to monthly income and expense statements for the years 1995-2006, and for any deductions that were made from the $325,000[.00] sales proceeds in 2006");

- 2) Count 2: Breach of Fiduciary Duty (claiming that Defendant Rajaratnam breached the fiduciary duties he owed to Appellant under "Pennsylvania's Uniform Partnership Act" and as "a majority shareholder," to "account for and hold any and all [] profits from October 27, 1995 until the property was sold in 2006, at which time [Defendant Rajaratnam] was required to pay [Appellant] half of the sales proceeds and half of the net rental income generated before the property was sold");

- 3) Count 3: Commingling and Diversion of Assets[2] (claiming that Defendant Rajaratnam commingled and diverted "the net operating income and sales proceeds" of the corporation the Property for his own benefit);

- 4) Count 4: Breach of Contract (claiming that Appellant and Defendant Rajaratnam "had a verbal agreement to share the profits equally" and that Defendant Rajaratnam breached this contract when he failed to

_____

[2] With respect to the third count in Appellant's complaint, the full title of this count is: "Defendant's apparent co-mingling [sic] and diversion of net operating income and sales proceeds with his own or other accounts instead of maintaining separate accounts related solely to the management and/or sale of the property and not paying [Appellant] his 50% share." Appellant's Complaint, 5/9/12, at Count 3.

- 5 -

pay Appellant "half of the $325,000[.00] sales proceeds" and "half of the net operating income earned during the years 1995-2006");

- 5) Count 5: Unjust Enrichment (claiming that, from 1995 until 1997, Appellant "provided services to Defendant [Rajaratnam]," which enriched the business and that it would be inequitable for Defendant Rajaratnam to retain the benefits without proper compensation to Appellant); and,

- 6) Count 6: Constructive Fraud (claiming that Defendant Rajaratnam breached his fiduciary duty to Appellant by failing to provide Appellant with an accounting and by concealing, destroying, falsifying, and failing to keep documents which could allow for an accurate accounting).

On June 18, 2012, Defendant Rajaratnam filed preliminary objections to Appellant's complaint. The preliminary objections claimed that: 1) but for Appellant's breach of contract claim, all of Appellant's claims were barred by the gist of the action doctrine; 2) Appellant's claim for commingling and diversion of assets (Count 3) failed to state a claim upon which relief may be granted, as it "is not a recognized cause of action in Pennsylvania;" 3) Appellant's claim for unjust enrichment (Count 5) fails as a matter of law because Appellant alleged the existence of a written and an oral contract and because Appellant failed to "specify the type of work, the amount of labor involved, the character and nature of the work performed the skill and experience called for in providing the work, or the value of the services

rendered in connection with the [c]ontract;" and, 4) Appellant's claim for breach of fiduciary duty (Count 2) and Appellant's claim for constructive fraud (Count 6) failed as a matter of law because Appellant alleged that the fiduciary duty arose out of Pennsylvania's Uniform Partnership Act – yet Appellant and Defendant Rajaratnam were not partners, but were shareholders in a closely held corporation. Defendant Rajaratnam's Preliminary Objections, 6/18/12, at 1-6.

On June 27, 2012, Appellant filed a lengthy response to Defendant Rajaratnam's preliminary objections and, within this response, Appellant claimed that the trial court should overrule all of Defendant Rajaratnam's preliminary objections. Appellant's Response to Preliminary Objections, 6/27/12, at 1-17. Further, within Appellant's response, Appellant claimed that the trial court should dismiss Defendant Rajaratnam's preliminary objections because they were untimely. *Id.* at 11. However, Appellant did not file preliminary objections to Defendant Rajaratnam's preliminary objections, Appellant's response did not contain a notice to plead, and, within Appellant's response, Appellant did not claim that the untimely filing caused him prejudice. *See id.* at 1-17.

On September 5, 2012, following oral argument, the trial court sustained Defendant Rajaratnam's preliminary objections and dismissed Counts 1, 2, 3, 5, and 6 of Appellant's complaint. Trial Court Order, 9/5/12, at 1. Therefore, the only claim that survived the pleading stage of the proceedings was the breach of contract claim.

The trial court summarized the ensuing procedural history of this matter as follows:

> Defendant [Rajaratnam filed an answer and new matter and, within this filing, Defendant Rajaratnam], raised the defense of statute of limitations. The defense was the basis for Defendant [Rajaratnam's] motion for judgment on the pleadings and motion for summary judgment; both [motions] were summarily denied without testimony or argument on September 28, 2012 and October 4, 2013, respectively.
>
> A trial date certain of December 16, 2013 was ordered. . . . Following a conference with counsel and [an] extensive review of the docket and pleadings, [the trial] court ordered the matter bifurcated on December 11, 2013, scheduling a bench trial on the statute of limitations issue and if need be, jury selection to commence immediately thereafter on the breach of contract claim. The bench trial was conducted from Monday, December 16, 2013 through Wednesday, December 18, 2013. At the conclusion of the bench trial, the [trial] court found that [Appellant's] breach of contract action had not been filed within the requisite four year statute of limitations period and judgment was entered in favor of [Defendant Rajaratnam. As the trial court concluded: "at the very least[, Appellant] was aware that [Defendant Rajaratnam] was not abiding by the terms of their agreement as of June 19, 2006. Accordingly, an action against [Defendant Rajaratnam] should have been initiated no later than June 19, 2010. The [c]omplaint in this matter was not filed until May 9, 2012, nearly two years after the limitation period had expired."]

Trial Court Opinion, 6/18/14, at 4 (some internal capitalization omitted).

Following the denial of Appellant's timely post-trial motion, Appellant filed a timely notice of appeal to this Court. Appellant now raises the following claims on appeal:

1(a). Did [the trial court] err in ordering a bifurcated bench trial for the sole purpose of determining whether to dismiss [Appellant's] case based on the statute of limitations where this issue had already been litigated and decided in favor of [Appellant] by two other judges of the same level court?

1(b). Did [the trial court] err in reversing the two prior decisions of Judge Allen and Judge Robbins-New where they had found in [Appellant's] favor when they denied [Appellant's] motion for judgment on the pleadings and motion for summary judgment, both motions based solely on the statute of limitations?

2(a). Did [the trial court] err in ruling that the testimony of [Appellant's] witnesses is not relevant to any issue concerning the statute of limitations but, rather, their testimony is only relevant to damages?

2(b). Did [the trial court] deprive [Appellant] of a fair trial by not allowing his witnesses to testify?

3. Did [the trial court] err in ordering a bifurcated bench trial on the statute of limitations only two days before [Appellant] was scheduled to pick a jury and five days before the jury trial was scheduled to begin, depriving [Appellant] of his right to a fair trial, where [Appellant] did not have sufficient time to prepare simultaneously for both the bifurcated bench trial and the jury trial?

4. Did [the trial court] err in dismissing [Appellant's] case based on the statute of limitations where [Appellant] as a matter of law acted reasonably or, minimally, reasonable jurors could differ on the issue and the matter, therefore, should have been decided by a jury?

5. Did [the trial court] err in ruling that the statute of limitations began to run from 2006 when the property was sold where [Appellant] acted reasonably and could not have known about his breach of contract action by that date?

6(a). Did [the trial court] err in ignoring that [Defendant Rajaratnam's] fraud tolled the statute of limitations until [Appellant's] discovery of [Defendant Rajaratnam's] fraud, which only occurred since after the initiation of this lawsuit,

within the four-year statute of limitations for breach of contract?

6(b). Did [the trial court] err in not submitting to the jury the question of whether Defendant [Rajaratnam] had made false statements to [Appellant] and whether [Appellant] was reasonable in relying on them?

6(c). Did [the trial court] err in not finding that [Defendant Rajaratnam] breached his duty of disclosure which existed by virtue of his being the majority managing shareholder and sole maintainer of the Raj Villa corporate books and records, and in not finding that said breach constitutes fraud as should toll the statute of limitations until actual discovery of [Defendant Rajaratnam's] fraud?

6(d). Did [the trial court] err in not finding that [Defendant Rajaratnam] both breached his fiduciary duty to [Appellant] which existed by virtue of [Appellant] being the majority managing shareholder and sole maintainer of the corporate books and records, and committed fraud, and that [Defendant Rajaratnam's] fraud and self-dealing should have tolled the statute of limitations?

7(a). Did [the trial court] err in dismissing [Appellant's] count for an accounting based on the gist of the action and economic loss doctrines where [Appellant's] accounting count is not a tort remedy?

7(b). Did [the trial court] err in dismissing [Appellant's] counts for an accounting, breach of fiduciary duty[,] and fraud based on the gist of the action and economic loss doctrines?

7(c). Did [the trial court] err in not finding that [Appellant's] claims against [Defendant Rajaratnam] sounded in tort, that [Defendant Rajaratnam] owed duties to [Appellant] which existed independent of the parties' contract, and that parties to a contract can recover for breach of fiduciary duty and fraud if the contract is collateral to the tort remedies that arise by virtue of social policies rather than by virtue of mutual consensus?

7(d). Did [the trial court] err as a matter of law in not recognizing that the gist of [Appellant's] action is his action for an accounting, without which he could not determine whether [Defendant Rajaratnam] breached the contract, and that the breach of contract count was collateral thereto?

7(e). Did [the trial court] err in concluding that [Appellant's] counts for an accounting, breach of fiduciary duty[,] and fraud are contract based where they, in fact, are relationship based related to [Defendant Rajaratnam's] breach of duties that arise from the parties' majority/minority shareholder relationship?

8. Did [the trial court] err in dismissing [Appellant's] count for an accounting which has a six-year statute of limitations where this resulted in [the trial court] dismissing [Appellant's] case based on the four-year statute of limitations for breach of contract?

9. Did [the trial court] err in dismissing [Appellant's] breach of fiduciary duty count based on [Appellant] purportedly not alleging that the parties entered into a partnership?

10. Did [the trial court] err in dismissing [Appellant's] wrongful commingling count?

11. Did [the trial court] err in not enforcing the 20-day deadline proscribed by the Rules of Civil Procedure when he failed to dismiss [Defendant Rajaratnam's] late filed preliminary objections where [Defendant Rajaratnam] did not provide any explanation for his delay and where [Appellant] was extremely prejudiced by the granting of [Defendant Rajaratnam's] untimely preliminary objections?

12. Did [the trial court] err in denying [Appellant's] motion to amend the pleadings to conform to the evidence made at the trial in accordance with Pennsylvania Code § 35.49?

Appellant's Brief at 7-10 (some internal capitalization omitted).[3]

According to Appellant's claims "1(a)" and "1(b)," the trial court violated the coordinate jurisdiction rule when – following a bench trial – it concluded that Appellant's breach of contract claim was barred by the statute of limitations. As Appellant contends, Defendant Rajaratnam raised the identical statute of limitations defense in his motion for judgment on the pleadings and motion for summary judgment – and the respective trial judges denied Defendant Rajaratnam's claims for relief. Appellant's Brief at 31. Appellant claims that, following a trial, the coordinate jurisdiction rule prevented the trial court from concluding that the statute of limitations barred Appellant's claims – when two prior judges from the same court already ruled on the issue and arrived at a contrary conclusion. **Id.** Appellant's claim is frivolous.

Our Supreme Court has held that, "upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial

_____

[3] We remind Appellant that the better practice on appeal is to distill one's claims down to those with a meaningful likelihood of success. **See Commonwealth v. Robinson**, 864 A.2d 460, 480 n.28 (Pa. 2004), *quoting* Ruggero J. Aldisert, *The Appellate Bar: Professional Competence and Professional Responsibility–A View From the Jaundiced Eye of the Appellate Judge*, 11 Cap. U.L. Rev. 445, 458 (1982) (emphasis in original) ("when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to **any** of them.").

court." ***Commonwealth v. Starr***, 664 A.2d 1326, 1331 (Pa. 1995). Yet, as our Supreme Court explained:

> When determining whether the coordinate jurisdiction rule applies . . . [the court] looks to where the rulings occurred in the context of the procedural posture of the case. . . . Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion. However, a later motion should not be entertained or granted when a motion of the same kind has previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question.

***Riccio v. Am. Republic Ins. Co.***, 705 A.2d 422, 425 (Pa. 1997) (internal quotations and citations omitted).

In this case, the coordinate jurisdiction rule obviously did not prevent the trial court from concluding that Appellant's breach of contract claim was barred by the statute of limitations: the trial court's conclusion followed **a trial** and was based upon the **factual determinations** the trial court made during the trial. This is in contrast to the two prior rulings, which were made in response to a motion for judgment on the pleadings and a motion for summary judgment – where no fact-finding occurred or was permitted.

Therefore, since the trial court's final statute of limitations ruling "occurred in the context of [a different] procedural posture of the case," the trial court's ruling did not violate the coordinate jurisdiction rule. Appellant's claim to the contrary is frivolous.

Appellant's claims "2(a)" and "2(b)" contend that the trial court erred when it precluded his proposed witnesses from testifying at the statute of limitations bench trial because, Appellant claims, the witnesses would have provided rebuttal testimony and would have "given testimony relevant to the issue of fraud as tolls [sic] the statute of limitations." Appellant's Brief at 35-36. However, within Appellant's brief to this Court, Appellant has not: explained the substance of his proposed witnesses' testimony; explained how the proposed witnesses would have qualified as rebuttal witnesses; or explained how their testimony would have been "relevant to the issue of fraud as tolls [sic] the statute of limitations." ***See id.*** Instead, Appellant simply refers this Court to pages in the reproduced record, which, Appellant declares, constitute a summary of his witnesses' proposed testimony. ***Id.***

In essence, Appellant requests this Court to construct his appellate argument for him. We will not do so. Appellant's second numbered claim is thus waived. ***See Rabatin v. Allied Glove Corp.***, 24 A.3d 388, 396 (Pa. Super. 2011) (the Superior Court "may not act as counsel for an appellant and develop arguments on his behalf").

Third, Appellant claims that the trial court erred in ordering a bifurcated bench trial "only two days before [Appellant] was scheduled to pick a jury." According to Appellant, the trial court's scheduling order did not provide Appellant with "sufficient time to adequately prepare for either the bench trial or the jury trial" and the trial court thus "depriv[ed Appellant] of his right to a fair trial." Appellant's Brief at 37. This claim is waived, as

Appellant did not request a continuance from the trial court. Appellant thus did not provide the trial court with any notice that the scheduling order failed to provide Appellant with sufficient time to prepare for trial. Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"); *see also Commonwealth v. Kennedy*, 959 A.2d 916, 924-925 (Pa. 2008) (holding that counsel's failure to request a continuance waives the issue on appeal).

Within Appellant's fourth, fifth, and sixth numbered claims on appeal, Appellant contends that the trial court erred when it determined that the statute of limitations barred Appellant's breach of contract claim; determined that Defendant Rajaratnam's fraud did not toll the statute of limitations; and, refused to allow a jury to consider the statute of limitations and fraud issues. Appellant's Brief at 38-48. These claims fail.

At the outset, Appellant's claim that the trial court erred when it refused to allow a jury to consider the statute of limitations and fraud issues is waived, as Appellant did not object to the trial court's decision to act as the fact-finder on those issues. Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Appellant also contends that the evidence was insufficient to support the trial court's determinations that the statute of limitations barred Appellant's breach of contract claim and that Defendant Rajaratnam's fraud did not toll the statute of limitations. Appellant's contentions are meritless. As the trial court thoroughly explained:

Despite the numerous filings by [Appellant], the crux of this case is whether or not [Appellant] timely filed a breach of contract action against [Defendant Rajaratnam]. The statute of limitations for a contract action is [four] years. 42 Pa.C.S.A. § 5525. [Appellant] failed to bring his cause of action within the requisite time period and no action or inaction on the part of [Defendant Rajaratnam] tolled the limitation period.

The record reveals that although it may have been earlier, at the very least [Appellant] was aware that [Defendant Rajaratnam] was not abiding by the terms of their agreement as of June 19, 2006. Accordingly, an action against [Defendant Rajaratnam] should have been initiated no later than June 19, 2010. The complaint in this matter was not filed until May 9, 2012, nearly two years after the limitation period had expired.

. . .

Per the testimony and documentary evidence presented at trial, the parties entered into an agreement in October [] 1995 and managed the [P]roperty jointly until [Appellant] returned to India in 1997. Once [Appellant] returned to India, he did not receive rental income and was advised that the [P]roperty was operating at a loss. [Appellant] repeatedly e-mailed [Defendant Rajaratnam] for an accounting and updates regarding the [P]roperty and received sporadic responses from [Defendant Rajaratnam] until the sale of the [P]roperty.

According to [Appellant's] evidence, he e-mailed [Defendant Rajaratnam] approximately [20] times between June 28, 2002 and July 13, 2006. The majority of the communications were requesting rental and expenditure information on the [P]roperty.

The [P]roperty was sold on February 27, 2006, for $325,000[.00]. [Defendant Rajaratnam] wired [Appellant's] account in India $24,577.55 on May 10, 2006. On June 16, 2006, [Appellant e-mailed Defendant Rajaratnam,] challenging the amount that had been wired, but confirming its receipt. In the e-mail, [Appellant] states that "**This**

**amount is too little considering the large equity after purchase and rehabilitation of the property.**"[fn.1]

> [fn.1.] At this point, [Appellant] had received his initial investment with 12% interest, had been reimbursed for his costs in rehabbing the [P]roperty, had not paid any additional funds to maintain the [P]roperty[,] and had received $24,577.55 from the sale proceeds.

> [Appellant] again e-mailed [Defendant Rajaratnam] on June 19, 2006, asserting that at a minimum, he was entitled to approximately $130,000[.00] from the sale. He also contested that the sale was undertaken without his written authorization as required by the contract. During this same time frame, [Appellant] made an inquiry to a friend who was a lawyer since he was concerned about his status as an officer of the corporation. He was told he was not listed as one.

> [The trial court] finds that the statute of limitations ran on June 19, 2010, four years from the date that [Appellant] first challenged the amount of proceeds that he had received from the sale of his property.

> . . .

> [Appellant's] insistence that without an accounting he could not know that he was injured and that actual knowledge of [Defendant Rajaratnam's] fraud was required before he was bound to pursue his claim is both disingenuous and contrary to what the law requires of [Appellant]. [Defendant Rajaratnam's] failure to provide an accounting only addresses the extent of [Appellant's] damages[,] not the fact that a breach had occurred.

Trial Court Opinion, 6/18/14, at 7 and 13-14 (emphasis in original) (some internal capitalization omitted).

The evidence thoroughly supports the trial court's factual conclusion that "at the very least [Appellant] was aware that [Defendant Rajaratnam] was not abiding by the terms of their agreement as of June 19, 2006." Trial

- 17 -

Court Opinion, 6/18/14, at 7. Moreover, since the evidence supports the trial court's conclusion that Appellant **knew**, on June 19, 2006, that Defendant Rajaratnam breached the contract, breached the duties he owed to Appellant, and did not pay Appellant what was owed, the evidence also supports the trial court's conclusion that Defendant Rajaratnam's alleged fraud did not toll the running of the statute of limitations beyond June 19, 2010. *See Fine v. Checcio*, 870 A.2d 850, 861 (Pa. 2005) ("a statute of limitations that is tolled by virtue of fraudulent concealment **begins to run when the injured party knows or reasonably should know of his injury and its cause**") (emphasis added). Appellant's claims fail.

However, Appellant's next claim on appeal does entitle Appellant to relief. According to Appellant, the trial court erred when it dismissed his accounting claim at the pleading stage, based upon the gist of the action doctrine. We agree. Moreover, since our Supreme Court has held that the statute of limitations for an accounting claim is six years – and since Appellant filed his complaint within six years of June 19, 2006 – we conclude that the trial court's error in dismissing the accounting claim cannot be considered harmless. Therefore, we must vacate the trial court's order in part and remand for further proceedings.

We have stated:

> A preliminary objection in the nature of a demurrer is properly [sustained] where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence

outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the [preliminary objections] will result in the denial of claim or a dismissal of suit, [the preliminary objections may be sustained] only where the case [is] free and clear of doubt.

*Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 966 (Pa. Super. 2009) (internal citations, quotations, and corrections omitted).

Here, the trial court sustained Defendant Rajaratnam's preliminary objection in the nature of a demurrer, and dismissed Appellant's accounting claim based upon the "gist of the action" doctrine.

The gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims." *eToll Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002). It does so by "preclud[ing] plaintiffs from recasting ordinary breach of contract claims into tort claims." *Id.* Thus, "[w]hen a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether

the 'gist' or gravamen of [the action] sounds in contract or tort." ***Erie Ins.***

***Exch. v. Abbott Furnace Co.***, 972 A.2d 1232, 1238 (Pa. Super. 2009).

This Court has explained:

> Although they derive from a common origin, distinct differences between civil actions for tort and contractual breach have been developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals. To permit a promisee to sue his promisor in tort for breaches of contract *inter se* would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.
>
> However, a breach of contract may give rise to an actionable tort where the wrong ascribed to the defendant is the gist of the action, the contract being collateral. The important difference between contract and tort claims is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie from the breach of duties imposed by mutual consensus. In other words, a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.

***Hart v. Arnold***, 884 A.2d 316, 339-340 (Pa. Super. 2005) (internal

quotations, citations, corrections, and emphasis omitted).

However, an action for an accounting does not sound in tort. Rather,

as pleaded in Appellant's complaint, an accounting is an equitable action that

is "defined as an adjustment of the accounts of the parties and a rendering

of a judgment for the balance ascertained to be due." 1 Am. Jur. 2d

Accounts & Accounting § 52; 14 Standard Pennsylvania Practice 2d § 81:1.

Therefore, by definition, the gist of the action doctrine cannot preclude

Appellant's claim for an accounting – and, on this basis alone, the trial court should have overruled Defendant Rajaratnam's preliminary objections to the accounting claim. Further, since Defendant Rajaratnam did not seek the dismissal of Appellant's accounting claim on any basis other than the gist of the action doctrine, the trial court erred when it dismissed Appellant's accounting claim.

Further, as our Supreme Court held, an action for an equitable accounting "is subject to the six-year [statute of] limitation." **Ebbert v. Plymouth Oil Co.**, 34 A.2d 493, 495-496 (Pa. 1943).[4] Therefore, since the trial court concluded that, "at the very least [Appellant] was aware that

_____

[4] In **Ebbert**, our Supreme Court expressly held that an equitable accounting action is subject to a six-year statute of limitations. **Ebbert**, 34 A.2d at 495-496. The **Ebbert** Court reached this conclusion by first recognizing the legal principle that "equity will frequently adopt and apply the statute of limitations which controls analogous proceedings at law." **Id.** at 495. The **Ebbert** Court then held that, since an action for an accounting at law is "on the same plane, in practice, as an action in assumpsit," and since an action in assumpsit was subject to the six-year statute of limitations, an equitable account action was also subject to the six-year statute of limitations. **Id.** at 495-496.

Obviously, much has changed since **Ebbert** was decided. This includes the fact that, today, the vast majority of contractual claims are subject to the four-year statute of limitations, which is set forth in 42 Pa.C.S.A. § 5525. Nevertheless, since the **Ebbert** Court expressly held that an equitable accounting claim is subject to a six-year statute of limitations, we must conclude that Appellant's current equitable accounting claim is subject to a six-year statute of limitations. **See Fiore v. White**, 757 A.2d 842, 847 (Pa. 2000) ("[u]ntil a court of greater jurisdiction reverses a decision of a lower court, or a court of equal jurisdiction overrules a decision, the law emanating from the decision remains law").

- 21 -

[Defendant Rajaratnam] was not abiding by the terms of their agreement as of June 19, 2006" – and since Appellant initiated the current action within six years of that date – Appellant's accounting claim is not time-barred. The trial court's error in this case was thus not harmless. We must, therefore, vacate the portion of the trial court's order that dismissed Appellant's accounting claim and remand for further proceedings.

Next, Appellant claims that the trial court erred when it dismissed his claims for breach of fiduciary duty, fraud, and commingling at the pleading stage. Appellant's Brief at 50-63. Yet, even if we were to assume that the trial court erred when it dismissed these claims, the trial court's error would be harmless. This is because the trial court already arrived at the factual conclusion that Appellant **knew** – as of June 19, 2006 – that Defendant Rajaratnam wronged him by breaching the duties he owed to Appellant and refusing to pay to Appellant what was owed. Since Appellant's breach of fiduciary duty claim is subject to the two-year statute of limitations set forth in 42 Pa.C.S.A. § 5524(7) – and since Appellant's separately-stated claims for "fraud" and "commingling" are mere subcategories of Appellant's breach of fiduciary duty claim – Appellant's claims are all barred by the applicable, two-year statute of limitations. Therefore, even if the trial court erred when it dismissed Appellant's claims for breach of fiduciary duty, fraud, and commingling, the error is harmless and does not entitle Appellant to relief. Appellant's claims thus fail. **See Donnelly v. Bauer**, 720 A.2d 447, 454 (Pa. 1998) (an appellate court "may affirm [the] decision [of the] court

below on any ground, without regard to [the] ground[] which the court below relied").

For Appellant's eleventh numbered clam on appeal, Appellant argues that the trial court erred when it refused to strike Defendant Rajaratnam's untimely preliminary objections. Appellant's Brief at 65-67. This claim is waived, since Appellant did not file preliminary objections to Defendant Rajaratnam's preliminary objections. Instead, Appellant simply filed a "response" to the preliminary objections – and Appellant's "response" neither contained a notice to plead nor asserted that Appellant was prejudiced by Defendant Rajaratnam's untimely filing. Appellant's clam on appeal is thus waived. *See Button v. Button*, 548 A.2d 316, 318 (Pa. Super. 1988) (the failure of an opposing party to file preliminary objections to improper or faulty preliminary objections waives the defect); *see also Peters Creek Sanitary Auth. v. Welch*, 681 A.2d 167, 170 (Pa. 1996) (holding that Pennsylvania Rule of Civil Procedure 1026 "is not mandatory but permissive. [The Supreme Court] has held that late pleadings may be filed if the opposite party is not prejudiced and justice requires. Much must be left to the discretion of the lower court") (internal quotations and citations omitted).

Finally, Appellant claims that the trial court erred when – following the trial – the trial court denied Appellant's "motion to amend the pleadings" so that Appellant could re-plead his claims for breach of fiduciary duty, fraud, and commingling (which were the claims that the trial court dismissed in

response to Defendant Rajaratnam's preliminary objections). This Court already held that the trial court erred when it dismissed Appellant's claim for an accounting. Further, this Court also held that, even if the trial court erred in dismissing Appellant's claims for breach of fiduciary duty, fraud, and commingling, the error is harmless, as the claims are barred by the two-year statute of limitations. Therefore, Appellant's final claim on appeal does not entitle Appellant to relief.

Judgment vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/6/2015